In re Jerry Ralph SHINEW, Debtor.

The TOLEDO BLADE COMPANY,
Plaintiff,

v.

Jerry Ralph SHINEW, Defendant.

Bankruptcy Nos. 82–0205, 82–0340.
Related Case: 81–02705.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Sept. 23, 1983.

Louis J. Hattner, Toledo, Ohio, for plaintiff.

James F. Shemas, Joseph M. Thomson, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause came before this Court on a Complaint to Determine Dischargeability of

Debt filed by the Plaintiff, Toledo Blade Company (Toledo Blade), in Adversary Case No. 82–0205. It also comes before this Court on a Complaint Objecting to Discharge filed by the Plaintiff, Liberty Mutual Insurance Company (Liberty Mutual), in Adversary Case No. 82–0340. On September 24, 1982, this Court entered an Order consolidating these two cases, inasmuch as they address the same factual circumstance and present related issues of law. As part of the Order consolidating these cases, this Court also Ordered that the parties submit briefs of counsel and any evidence they wished the Court to consider. The Order indicated that the Court would render a decision in these cases based upon the record and the arguments of counsel.

The Complaint filed by Liberty Mutual, despite its title, sets forth an action to determine dischargeability of debt pursuant to 11 U.S.C. § 523(a)(4). Accordingly, it will be handled as such an action.

The Debtor and his spouse filed a joint bankruptcy petition on December 11, 1981. The adversary Complaint filed by Toledo Blade named only Jerry Shinew as a Defendant. The Complaint filed by Liberty Mutual named both the Debtor and his wife as Defendants. On November 12, 1982, after the consolidation, Liberty Mutual moved this Court for judgment on the pleadings. On May 16, 1983, the Debtor's wife also moved for judgment on the pleadings. Both motions are unopposed.

## FACTS

The facts recited in the Complaints allege that the Defendant was an employee of the Toledo Blade Company, an organization which publishes a daily newspaper known as *The Toledo Blade.* During the period of 1976–1979, this paper sponsored two contests through its distribution known as the "Daisy Dollar Crossword Puzzle" and the "Football Contest". The Defendant was the supervisor of these contests and is alleged to have been acting in a fiduciary capacity with The Toledo Blade. During the course of his employment the Defendant is purported to have wrongfully appropriated approximately Twenty-two Thousand and no/100 Dollars ($22,000.00) by manipulating the names of the weekly winners.

During the period in question, the Toledo Blade was insured by Liberty Mutual against losses resulting from employee fraud. When the contest scheme of the Defendant was discovered Liberty Mutual honored its policy and paid to the Toledo Blade Ten Thousand and no/100 Dollars ($10,000.00). Pursuant to Section 14 of the insurance contract, Liberty Mutual became:

"... subrogated to all the insured's rights of recovery therefor against any person or organization..."

The Defendant was convicted of grand theft relating to the contest fraud and is serving a probationary sentence which requires him to pay Twenty and no/100 Dollars ($20.00) per month in restitution.

In response to the facts stated in the complaint filed by Toledo Blade the Defendant admits that he was an employee of the Toledo Blade and that he:

"... illegally and through the use of fraud, devised a scheme to bilk [the] Plaintiff out of monies that were being paid out in the 'Daisy Dollar' contest."

The Defendant affirmatively pleads that the Toledo Blade received Ten Thousand and no/100 Dollars ($10,000.00) from Liberty Mutual under the policy and that as a result, he only owes Toledo Blade Eleven Thousand Thirty-four and 67/100 Dollars ($11,034.67). The newspaper's prayer is for Twenty-one Thousand Thirty-four and 67/100 ($21,034.67), the amount they claim was pilfered by the Defendant.

In response to the complaint of Liberty Mutual the Defendant again admits that he was an employee and that:

"As a direct and proximate result of the wrongful and fraudulent acts of the Defendant, Jerry R. Shinew, the Plaintiff ... has sustained a pecuniary loss in the amount of $10,000.00."

The Defendant goes on to admit that he was convicted of fraud regarding the misappropriation of money and acknowledges

the debt to Liberty Mutual. He specifically denies any fiduciary capacity with the Toledo Blade or that he handled any of the funds set aside for the contests. He also specifically denies that his wife had any part in the perpetration of the crime.

## LAW

### I.

When ruling on a motion for judgment on the pleadings, the Court may enter such a judgment only when the complaint, stripped of those allegations which are denied, contains sufficient averments to satisfy all the elements of the intended cause of action. 61 Am.Jur.2d *Pleadings* § 233. For purposes of such a motion all material allegations admitted are to be accepted as true, and those which are denied taken as false. *Quality Mercury Inc. v. Ford Motor Co.*, 542 F.2d 466 (8th Cir.1976). Federal Rule of Civil Procedure 12(c) provides that if matters outside the pleadings are presented with a motion for judgment on the pleadings, the motion will be taken as a motion for summary judgment. Although not the movant, the Toledo Blade has attached exhibits to its brief. Since both the movant Liberty Mutual and the Toledo Blade are pursuing substantially the same claim, this Court will regard the motion now before it as a motion for summary judgment. However, the exhibits address only the issue as to the amount of the debt to be held non-dischargeable. Therefore, only the pleadings are available to determine whether or not grounds for an exception to discharge exists.

### II.

The non-dischargeability of a debt arising from fraudulent conduct is addressed by 11 U.S.C. § 523(a)(4) which states in pertinent part:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt-(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny..."

Under this section, an exception to discharge exists when there has been fraud or defalcation which acting in a fiduciary capacity, or when there has been embezzlement or larceny, regardless of whether or not the offender was acting in a fiduciary role. 3 *Collier on Bankruptcy* 15th Ed. § 523.14. The issue presented by these motions is whether or not the Plaintiff's complaints, when credited with the admitted allegations, sets forth sufficient facts to find that the Defendant was guilty of embezzlement, larceny, or fraud while acting in a fiduciary capacity.

A review of the pleadings finds that neither complaint asserts any claims against the Defendant Angela Shinew. It is also apparent from the circumstances in this case that she was not acting in concert with her husband nor should she be held accountable for his actions. While she may have been a benefactor of the fraud, no allegations to that effect have been made and, therefore, none may be considered.

A further review of the pleadings finds that as to the complaint filed by the Toledo Blade, the Defendant has admitted the illegal and fraudulent acquisition of contest funds. Although he denies a fiduciary capacity with the Plaintiff, he admits his conviction for the conduct in question.

In his answer to the Complaint of Liberty Mutual, the Defendant did not as readily admit the nature of his acts, although he again denies any fiduciary capacity. He does admit, either specifically or by failure to answer, *See*, Federal Rule of Civil Procedure 8(d), Bankruptcy Rule 708, to allegations which sufficiently characterize his conduct as fraudulent so as to allow the conclusion that he has admitted the illegality of the deed. For example, the Defendant admitted that the loss was the result of "wrongful and fraudulent acts". He also admitted the allegation that "[the Defendants] are not entitled to a discharge of this debt..." The admission of misconduct is further supported by the fact that he included in his schedule of debts an entry on behalf of Liberty Mutual for a:

"Claim for $10,000.00 plus interest and costs, incurred as subrogee to a claim of the Toledo Blade Company . . . debtor, was convicted of fraud in a Daisy-Dollar scheme and was liable for the return of a total of $22,000.00, including the amount sued for. Mr. Shinew was convicted and is presently on probation, paying $20.00 per month through the Probation office. (Note: This total is not included in the A–3 total, as it is the understanding of the debtor that this debt is not dischargeable.)

It should be noted that in each answer the Defendant has specifically denied any fiduciary capacity with the Toledo Blade. However, fraud while acting in such a capacity is only one of the three avenues upon which non-dischargeability may be sought. When larceny or embezzlement is asserted the Plaintiff need not allege nor prove that the offender was a fiduciary. Conduct of either nature is sufficient to prevail in the action. Therefore, the Debtor's denial of a fiduciary relationship is without effect if the admissions establish that he embezzled or stole the money.

A further review of the pleadings reflects that the Defendant has admitted his conviction for grand theft under Ohio Revised Code § 2913.02. Ohio Revised Code § 2913.02 states that:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:

(1) Without the consent of the owner or person authorized to give consent;

(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

(3) By deception;

(4) By threat."

A conviction under § 2913.02 does not require a fiduciary capacity during the commission of the offense. As indicated in the comments which follow that section, the statute covers a number of what were previously different offenses, including embezzlement, larceny, conversion, and fraud. While these earlier offenses where distinguished by the different times at which the intent to deprive was formed, they were similar in that they all addressed a wrongful taking. Therefore, a conviction under the present statute signifies that there has been a wrongful taking of property, whether by theft or embezzlement.

Although a criminal conviction for grand theft does not, in and of itself, determine whether or not the resulting obligation is dischargeable, it is a fact that lends itself to such a finding. Larceny is the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to the taker's use without the consent of the owner. Embezzlement is the fraudulent appropriation of property by a person to whom such property had been entrusted, or into whose hands it has lawfully come. Under either course of conduct 11 U.S.C. § 523(a)(4) addresses the fraudulent appropriation of another's property, whether the appropriation was unlawful at the outset, and therefore a larceny, or unlawfully appropriated by the debtor after the property was entrusted to his care, and therefore an embezzlement. 3 *Collier on Bankruptcy* 15th Ed. § 523.15. Since both O.R.C. § 2913.02 and 11 U.S.C. § 523(a)(4) contemplate the wrongful taking of property, an admission of conviction under the criminal statute would constitute, under the facts and circumstances of this case, an admission of nondischargeable conduct in relation to a debt for purposes of 11 U.S.C. § 523(a)(4).

As a result of these admissions there are an ample number of substantiated allegations so as to hold that the Defendant should not be discharged from the debts owed to these Plaintiffs. Therefore, the Plaintiffs are entitled to a judgment as a matter of law.

### III.

The second issue raised by this case is the question as to how much of a debt is owed by the Defendant. Specifically, the question is whether or not the Ten Thousand and no/100 Dollars ($10,000.00) which is owed to Liberty Mutual should be deducted

from the amount claimed by the Toledo Blade, or whether the Toledo Blade is entitled to its entire claim. The Toledo Blade contends that they have a right to recover the total Forty-nine Thousand Thirty-four and 17/100 Dollars ($49,034.17) which was lost as a result of the Defendant's actions; the fact that they have only chosen to sue for part of what they are owed should not permit the Debtor to become the benefactor of the insurance policy. The Defendant argues that the Toledo Blade's request for a finding of non-dischargeability must be limited to the amount set forth in the complaint, and that the prayer of Twenty-one Thousand Thirty-four and 67/100 Dollars ($21,034.67) must yield to the request of Liberty Mutual to the extent Liberty Mutual has paid the Toledo Blade. He makes this argument on the grounds that by virtue of the subrogation agreement the Toledo Blade gave up its right to seek any amounts paid by an insurer. Under this argument, the Toledo Blade would recover only Eleven Thousand Thirty-four and 67/100 Dollars ($11,034.67).

■ It is well settled in Ohio that where a person is wrongfully injured at the hands of two or more persons acting in concert, each of the tortfeasors is severally liable to the injured party for the full amount of the damage. *Price v. McCoy Sales & Service, Inc.,* 2 Ohio St.2d 131, 207 N.E.2d 236 (1965), *Sickles v. Potts,* 29 Ohio App.2d 195, 280 N.E.2d 658 (1971). It is also well settled that when an insurer pays a loss caused by another's wrongful acts, the insurer is subrogated to the rights of the insured and may prosecute an action against the tortfeasor. *In re Wade,* 26 B.R. 477 (Bkrtcy.N.D.Ill.1983), *Aetna Casualty & Surety Co. v. Hensgen,* 22 Ohio St.2d 83, 258 N.E.2d 237 (1970). Where an insurer pays only part of the insured's loss the insurer may maintain a separate cause of action against the defendant to the extent that it has paid the insured. *Nationwide Ins. Co. v. Steigerwalt,* 21 Ohio St.2d 87, 255 N.E.2d 570 (1970), *Hoosier Casualty Co. v. Davis,* 172 Ohio St. 5, 173 N.E.2d 349 (1961).

The Toledo Blade has offered as evidence, an itemized chart of what it lost as a result of the contest scam. The Defendant has not contested these charts either as to substance or form. These charts indicate that as a result of the fraud the Toledo Blade paid out a total of Sixty-three Thousand Nine Hundred Sixteen and 67/100 Dollars ($63,916.67) in erroneous winnings. The Debtor received Twenty-one Thousand Thirty-four and 67/100 ($21,034.67), an accomplice received Twelve Thousand Six Hundred Forty-nine and 50/100 Dollars ($12,649.50), and other fraudulent winners received Thirty Thousand One Hundred Seventy-two and 50/100 Dollars ($30,172.50). As of the date of the charts Toledo Blade had recovered from some of the other erroneous winners Fourteen Thousand Six Hundred Eight-five and 50/100 Dollars ($14,685.50), making their net loss Forty-nine Thousand Two Hundred Forty-eight and 17/100 Dollars ($49,248.17).

■ As previously discussed, both an insurer and its insured may pursue separate actions against the same wrongdoer for losses resulting from a single act, provided that the damages sought do not overlap. *Nationwide Ins. Co. v. Steigerwalt,* supra. In the present case it is clear that Liberty Mutual is entitled to recover the Ten Thousand and no/100 Dollars ($10,000.00) it paid under its policy with Toledo Blade. This amount would be subtracted from the net loss, leaving a balance of Thirty-nine Thousand Thirty-four and 67/100 Dollars ($39,034.67) lost by Toledo Blade.

The Debtor, as a joint-tort feasor who has admitted the debt liability, is subject to having to repay the entire remaining net loss, despite the fact that he only received part of the proceeds. All the parties who participated in the commission of this tort are considered principals and are liable as such. In this case the debtor was the primary agent in the manipulation of the winning entries and he received the largest individual portion of what was taken. While the Debtor may, at some point, have a cause of action against any other tort-feasors for contribution, he alone is presently

before this Court and must therefore bear the entire burden.

The Defendant argues that the extent of subrogation should be deducted from what the Toledo Blade asserted in its complaint as its entitlement to recovery. However, nothing in the Toledo Blade's complaint suggests that it's suit was intended to be indicative of its total damages, nor is it indicated that the Toledo Blade suit in any way precluded a suit by Liberty Mutual. The fact that Toledo Blade sought to recover less than it was otherwise entitled to does not allow the Debtor to take advantage of that prayer simply because the amount claimed by the Toledo Blade happens to be the same amount the Debtor received through the fraud.

## CONCLUSION

Based upon the foregoing analysis it must be concluded that the Plaintiffs are entitled to judgment as a matter of law. It must also be concluded that the Defendant, as a joint tort-feasor, is liable to both the Plaintiffs for the amounts prayed for in each of their complaints. It should be noted that this Court has regarded the discrepancy between the amount the Toledo Blade asked for in their complaint ($21,034.67) and the amount listed on their charts as having been received by the Debtor ($21,094.67) as an error to be resolved in the Debtor's favor.

In reaching these conclusions this Court has considered all of the evidence and arguments of counsel, whether or not they are specifically referred to in this Opinion.

Accordingly, it is ORDERED that the debt to Liberty Mutual be held dischargeable as to the Defendant Angela Shinew.

It is FURTHER ORDERED that the debt owed to the Plaintiff Liberty Mutual be held as non-dischargeable in the amount of Ten Thousand and no/100 Dollars ($10,-000.00), and that the debt owed. to the Plaintiff Toledo Blade be, likewise, held non-dischargeable in the amount of Twenty-one Thousand Thirty-four and 67/100 ($21,034.67).