In re Aubrey William HARRELL and Florence Roderick Harrell, f/d/b/a Lometa Commission Company and Cattlemen's Commission Company, Debtor(s).

FIRST NATIONAL BANK OF MIDLOTHIAN, Plaintiff,

v.

Aubrey William HARRELL and Florence Roderick Harrell, f/d/b/a Lometa Commission Company and Cattlemen's Commission Company, Defendants.

Bankruptcy No. 87–10741.
Adv. No. 87–1233.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Dec. 12, 1988.

William C. Howard, Clark, Thomas, Winters & Newton, Austin, Tex., for plaintiff.

John Charles Ertel, Ertel & Prashner, San Antonio, Tex., for defendants.

## MEMORANDUM OPINION

LARRY E. KELLY, Chief Judge.

This adversary proceeding was initiated by First National Bank of Midlothian ("Plaintiff" or "FNB–M") on or about August 3, 1987. It complains of Aubrey William Harrell and wife, Florence Roderick Harrell, ("Debtors" or "Defendants") and seeks to determine dischargeability of debt pursuant to 11 U.S.C. § 523(a)(4). The Court finds that it has jurisdiction over this proceeding as a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## BACKGROUND

The background facts of the case can be gleaned from the contentions stated by the parties in their Agreed Pre–Trial Order filed with the Court. The Plaintiff asserts that the Defendants were in the business of buying and selling cattle. Plaintiff loaned Defendants funds for the purpose of purchasing cattle for resale, was granted a security interest in the cattle and was not repaid. The applicable note and security agreement prohibited Defendants from selling or offering for sale the collateralized cattle or otherwise transferring or incumbering them without prior written consent of FNB–M. Additionally, the Defendants were required to locate the collateralized cattle on a specific ranch located in Navarro County, Texas. Defendants were prohibited from removing the cattle without prior written notice being given to FNB–M and not receiving any written objection. However, Defendants violated the terms of the pertinent note and security agreement and in fact the collateralized cattle were moved, sold and the proceeds not tendered to FNB–M. Plaintiff asserts that it possesses no knowledge regarding the transactions involving the collateralized cattle, did not enter into any business dealings with the defendant which would constitute acquiescence of the actions taken by the Defendants and therefore the Defendants have rendered the subject indebtedness non-dischargeable under Code § 523(a)(4).

In general, the Defendants assert that the course of dealings between the parties removed any requirement of notice of sale of the secured property, as authorized by V.T.C.A.Bus. & Comm.Code, § 1.205. Defendants further assert that any notice required by the security agreements was waived by prior dealings between the parties, that they had on at least two prior occasions borrowed money from the Plaintiff with cattle as security and on both occasions cattle were sold without notice to or consent of the Plaintiff and the entire balance paid on the notes. Further, the Defendants indicate that only Mr. Aubrey Harrell executed any of the documents in question and that Florence Harrell, his wife, did not sign the note, the security agreement, the UCC Financing Statement or any other document and did not enter into any of the business negotiations with Plaintiff FNB–M.

The Court having considered all of the evidence submitted to it makes the following Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052.

## FINDINGS OF FACT

The following facts were stipulated to by the parties:

1. Defendant Aubrey William Harrell, d/b/a Midlothian Cattle Company executed a valid Promissory Note and Security Agreement on or about October 17, 1985 promising to pay First National Bank of Midlothian the original principal amount of $280,000.00. (Plaintiffs Exhibit # 1).

2. The Promissory Note and Security Agreement granted FNB–M, amongst other things, a purchase money first lien on 1000 mixed-breed Heifers and 300 mixed-breed cows branded "77" on the left hip (the "cattle"), to be located on the Chapman Ranch.

3. FNB–M perfected its security interest in the collateralized cattle through the proper filing on or about October 21, 1985, of a UCC–1 Financing Statement with the Secretary of the State of Texas. (Plaintiff's Exhibit # 2).

4. By its specific written terms, the Promissory Note and Security Agreement prohibited the Defendants from selling the cattle or offering to sell or otherwise transferring or encumbering the cattle or any interest therein without the prior written consent of FNB–M.

5. Additionally, the Promissory Note and Security Agreement referenced above required the Defendants to locate the cattle at the Chapman Ranch and prohibited the permanent removal of the cattle from the Chapman Ranch unless, prior to such removal, the Defendants delivered written notice to FNB–M of the location or locations to which the cattle were to be removed and FNB–M had not objected in writing to such removal.

6. The cattle were sold by the Defendants without payment to FNB–M and without the prior written or oral consent of FNB–M.

7. The Defendants permanently removed the cattle from the Chapman Ranch without giving written or oral notice to FNB–M of the location or locations to which the cattle were removed.

8. There is no documentation which evidences knowledge on the part of FNB–M of the transactions of the Defendants in regard to the sale of the collateralized cattle. Additionally there is no documentation which evidences acquiescence by FNB–M in regard to the sale of the collateralized cattle by the Defendants.

9. The purchase money indebtedness owed by the Defendants to FNB–M, evidenced by the Promissory Note and Security Agreement, referenced above, was not repaid to FNB–M.

10. The current outstanding indebtedness of the Defendants to FNB–M as of April 29, 1987, the date of the filing of the Defendants' voluntary petition under Chapter 7, is the principal amount of $275,181.24, plus $62,713.53 in interest up to the date of the filing of the petition, with a daily accrual of interest in the sum of $135.70.

In addition to the stipulations, the following constitute additional findings by the Court:

11. The relationship between Plaintiff and Defendant Aubrey Harrell was that of a creditor and a debtor.

12. None of the documents were ever signed by the Debtor Florence Harrell.

13. None of the business discussions between Plaintiff and Defendant Aubrey Harrell ever included Florence Harrell.

14. Mr. Aubrey Harrell had been in the cattle business for approximately 35 years. He had experience in borrowing large sums of money from several different banks over the course of those business dealings.

15. The evidence by way of testimony from Mr. Harrell and through Defendant's Exhibit D–1 indicated that in June 1985 Mr. Harrell sought to obtain a loan in the amount of $2,000,000.00 from Waxahachie Bank and Trust ("WB & T"). The proceeds from such loan were to be used to pay off several outstanding bank loans including the loan in question in FNB–M.

16. The WB & T loan request was approved by its loan department but was "subject to overline placement approval." Such approval apparently meant that the amount requested was over the loan limit authorization of WB & T and they would need to locate one or more other lenders willing to participate in the loan. Mr. Harrell did not understand that this condition applied to the approval given by WB & T's loan department.

17. Mr. Harrell communicated to Mr. Gene Rogers at the time he originally made the loan in question with FNB–M, the fact that he was seeking the consolidation loan at WB & T. Mr. Gene Rogers was at all times pertinent to this proceeding president of FNB–M.

18. The requirements of the loan and security agreements prohibiting sales of cattle without prior written approval had been included in all prior loan transactions between Mr. Harrell and FNB–M. They had never been enforced in the past. Mr. Rogers testified that such terms are generally not enforced on any cattle loans at FNB–M.

19. FNB–M was aware at all times pertinent to this proceeding that the Debtor's cattle were not being maintained at the ranch in Navarro County. At no time did FNB–M ever advise Debtor to relocate the cattle to said ranch.

20. From time to time in late summer and fall of 1985 Debtor sold certain of his cattle which were not collateral of FNB–M but which were collateral for other outstanding bank loans. All proceeds were remitted to WB & T as they had requested.

21. Mr. Harrell testified that in each prior instance when the proceeds were remitted to WB & T they then paid off the underlying bank debt in full.

22. Although Plaintiff has shown that it has thoroughly investigated this matter, that it deposed two of the loan officers and that it deposed two of the former loan officers at WB & T, no countervailing or rebuttal evidence was submitted and therefore the Court considers Debtor's statements of repayment of the underlying bank loans as being true and correct.

23. When Debtor later sold cattle which were collateral at FNB–M he likewise was requested by WB & T to remit the proceeds to them. All the cattle were sold and all proceeds were remitted to WB & T. There is no evidence that the Debtor did anything with the proceeds other than remit them to WB & T.

24. WB & T did not pay off in whole or in part any of Debtor's underlying indebtedness to FNB–M after it received the proceeds from the collateralized cattle.

25. Some time later Debtors filed suit against WB & T alleging damages for failure to comply with their agreement to fund and pay off the underlying indebtedness at FNB–M.

26. The depositions of two former WB & T officers, Mr. W.P. Banks and Mr. Charles Lacy were introduced to indicate they were involved in the WB & T loan application of Debtor, that the condition of finding participating banks was never met and therefore the $2,000,000.00 was never

funded, and also to indicate that they did not know of any conversations they had with the Debtor which would indicate that WB & T had in fact agreed to pay off underlying bank debt at FNB–M.

27. In considering the credibility of the witnesses the Court is hampered by the fact that only the Debtor's testimony was live while the testimony of the loan officers in question was by deposition. However, the unrebutted testimony is that WB & T did in fact receive all the proceeds in question from the collateralized cattle as well as other cattle, that other underlying bank debts were in fact paid off, and subsequent litigation was initiated by the Debtor against WB & T. The Court under the facts finds the more credible testimony to be that of the Debtor.

## ISSUE PRESENTED

The only real issue before the Court is whether or not the Plaintiff has met its burden of proof to establish that Code § 523(a)(4) applies to the facts so as to bar discharge of the Debtor's obligation to FNB–M.

## CONCLUSIONS OF LAW

1. The overriding purpose of the bankruptcy laws is to provide the bankrupt with comprehensive, much needed relief from the burden of his indebtedness by releasing him from virtually all of his debts. *Angelle v. Reed,* 610 F.2d 1335, 1339 (5th Cir.1980) quoting *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 113, 27 L.Ed.2d 124 (1970) (describing the overriding purpose of bankruptcy law as giving the Debtor a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debts").

2. To that end, exceptions to discharge are narrowly construed against the creditor and in favor of the bankrupt. *Murphy and Robinson Investment Co. v. Cross,* 666 F.2d 873, 879–80 (5th Cir.1982).

3. 11 U.S.C. § 523(a)(4), the only section cited by Plaintiff as supporting its claim against the defendants provides as follows:

"A discharge ... does not discharge an individual from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

■ 4. By the time of trial, Plaintiff had abandoned its argument that defendants were guilty of "fraud or defalcation in a fiduciary capacity." In fact, this Court concludes that under the facts of this case no fiduciary relationship between the parties existed. *Angelle v. Reed,* 610 F.2d 1335, 1338 (5th Cir.1980) (holding that the portion of the exception to dischargeability in 11 U.S.C. § 523(a)(4) which hinges on the existence of fiduciary capacity refers to a "technical trust ... which must exist prior to the act creating the debt and without reference to that act."); *In re Levitan,* 46 B.R. 380 (Bankr.S.D.N.Y.1985) (An agreement which is essentially a commercial security agreement in which the creditor has used trust language and imposed obligations on the debtor to secure repayment of the debt does not create the fiduciary relationship required by 11 U.S.C. § 523(a)(4)).

5. Larceny, defined as the fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use and with intent to permanently deprive the owner of such property, has never been alleged as a basis for exception to dischargeability in this case.

■ 6. Plaintiff's objection to dischargeability of its debt thus hinges on its contention that Defendants have committed embezzlement. Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. *In re Buhay,* 77 B.R. 561 (Bankr.W.D.Tex.1987); *In re Shinew,* 33 B.R. 588, 592 (Bankr.N.D.Oh.1983).

7. The burden of proof in an adversary proceeding under 11 U.S.C. § 523 is on the creditor who seeks to show that his debt is not to be discharged. *Hill v. Smith,* 260 U.S. 592, 43 S.Ct. 219, 67 L.Ed. 419 (1923); *Matter of Cross,* 666 F.2d 873 (5th Cir. 1982).

■ 8. The creditor in such a case must prove his case by evidence which is clear and convincing. *In re Church*, 69 B.R. 425 (Bankr.N.D.Tex.1987) citing Ferriel, The Preclusive Effect of State Court Decisions in Bankruptcy (First Installment), 58 Am. Bankr.L.J. 349, 362 (1984) (The vast majority of bankruptcy courts have held that, to warrant denial of discharge under 11 U.S. C. § 523, the evidence must be "clear and convincing.")

■ 9. The elements to be proven to make out a case of embezzlement are:

(1) appropriation of funds by the debtor,

(2) for the debtor's use or benefit,

(3) with fraudulent intent.

*In re Koelfgen*, 87 B.R. 993 (Bankr.D.Minn. 1988); *Savonarola v. Beran*, 79 B.R. 493 (Bankr.N.D.Fla.1987); *In re Bryant*, 73 B.R. 956 (Bankr.N.D.Tex.1987).

10. The decision in this case will turn on the Court's finding as to the second and third elements since there is no dispute that the Debtor did appropriate the creditor's property by failing to immediately and directly remit to FNB–M the proceeds of the sale of the collateral cattle.

■ 11. As stated in the Court's Findings of Fact above, when the Debtor sold the cattle which were collateral for the loan from FNB–M, he paid the proceeds of sale to WB & T. The evidence also showed that in the past the Debtor had paid proceeds of cattle sales to WB & T and loans from other banks had been paid off with those proceeds. Thus, the proceeds of the cattle sales in this instance were not diverted to the Debtor's own use and benefit.

■ 12. In addition, Plaintiff fails to carry its burden of proof with respect to the Debtor's fraudulent intent. An intent to defraud is an intention to deceive another person, and to induce such other person, in reliance upon the deception to assume, create, transfer, alter or terminate a right or obligation with reference to property. *Matter of Brinsfield*, 78 B.R. 364 (Bankr. M.D.Ga.1987). Fraudulent intent may be inferred from the conduct of the Debtor and from circumstances of the situation. *United States v. Powell*, 413 F.2d 1037 (4th Cir.1969); *Savonarola v. Beran*, 79 B.R. 493 (Bankr.N.D.Fla.1987). Fraudulent intent may be negated by the fact that the Debtor applied the funds openly, without any attempt at concealment. *In re Myers*, 52 B.R. 901 (Bankr.E.D.Va.1985). In this case, the evidence shows that the Debtor informed FNB–M of his intent to consolidate his loans through WB & T, the Debtor indeed had a loan application at WB & T that he reasonably believed had been approved and the Debtor paid the sales proceeds to WB & T with the reasonable understanding (based on the actual payoff of prior similar loans) that WB & T would pay off FNB–M.

## CONCLUSION

Based upon the findings and conclusions above, the Court finds that the debt of Aubrey William Harrell and Florence Roderick Harrell to First National Bank of Midlothian which arose out of a Promissory Note and Security Agreement in the original principal amount of $280,000.00 dated October 17, 1985 is DISCHARGEABLE. A separate Order of even date herewith will be entered to reflect the judgment of the Court.