**In re Donald A. BERNARD, Debtor.**

**CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Plaintiff.**

v.

**Donald A. BERNARD, Defendant.**

**Bankruptcy No. 88 B 20292.
No. 88 ADV. 6100.**

United States Bankruptcy Court,
S.D. New York.

May 1, 1989.

Lane & Mittendorf, New York City, for plaintiff; Steven E. Grill, of counsel.

Barr and Faerber, White Plains, N.Y., for defendant.

## DECISION ON OBJECTIONS TO DISCHARGE

### HOWARD SCHWARTZBERG, Bankruptcy Judge.

Plaintiff, Continental Illinois National Bank and Trust Company of Chicago ("Continental"), a judgment creditor of the debtor in the principal sum of $1,224,-414.60, has objected to the debtor's discharge in bankruptcy. The three grounds alleged by Continental for denying the debtor's discharge are: The making of a false oath proscribed under 11 U.S.C. § 727(a)(4)(A); the failure to explain satisfactorily losses or deficiencies of assets within the meaning of 11 U.S.C. § 727(a)(5); and transfers made by the debtor with actual intent to hinder, delay or defraud creditors within the meaning of 11 U.S.C. § 727(a)(2). The Chapter 7 debtor, Donald A. Bernard, has denied the charges in the complaint and has asserted certain affirmative defenses in his answer.

## FINDINGS OF FACT

1. The debtor filed with this court his petition for relief under Chapter 7 of the Bankruptcy Code on June 3, 1988. Pursuant to 11 U.S.C. § 301, the commencement of a voluntary case under a Chapter of the Bankruptcy Code constitutes an order for relief.

2. Continental is a judgment creditor of the debtor and has filed a proof of claim in the principal sum of $1,224,414.60, plus prepetition interest in the sum of $10,713.63, together with collection costs incurred by Continental subsequent to April 28, 1988.

3. Annexed to the debtor's petition are schedules and statements of his affairs which indicate that, except for a contingent, disputed claim against his former employer, the debtor claims to have the following non-exempt personal property:

$20,400—securities;

$10,000—motor boat and motor; and

$ 1,550—bank deposits and cash on hand.

4. On or about December 1, 1988, the debtor filed a request to amend his schedules to include an additional $17,458 in cash allegedly received as refunds for taxes withheld during 1987. The schedules and request, taken together, indicate that except for the debtor's contingent claim and his interest as a tenant by the entirety in certain real property, he has assets of $49,-408, and liabilities of $1,646,616.60.

5. Continental's first claim, based on a false oath proscribed under 11 U.S.C. § 727(a)(4)(A), asserts that the debtor has omitted reference in his schedules and statement of affairs to certain non-exempt property including a Steinway baby grand piano, two motor vehicles purchased by the debtor and registered in the name of his wife and daughter, three television sets, computer equipment and items of jewelry, including a wrist watch exceeding the exempt amount. Continental also alleges that the debtor has omitted from his schedules and statements of affairs payments made by the debtor within one year preceding his petition to the debtor's daughters and parents.

6. Continental's second claim for relief is bottomed on 11 U.S.C. § 727(a)(5), and charges that the debtor has failed to explain satisfactorily losses or deficiencies of his assets to meet his liabilities because the debtor had surplus income in each of the five years preceding the debtor's petition in bankruptcy; he realized funds from the sale of Alcide Corporation stock and from the debtor's sale of his interest in a condominium in Boston, Massachusetts.

7. Continental's third claim in its complaint relates to 11 U.S.C. § 727(a)(2) and alleges that within one year immediately preceding the filing of the petition initiat-

ing his Chapter 7 case, the debtor transferred funds or made payments to his two daughters and his parents and paid for a skiing trip for himself, his wife and daughter with actual intent to hinder, delay or defraud his creditors.

8. The debtor was the founder, president and chief executive officer of a computer leasing corporation formed in 1972 and known as Intech Capital Corporation. His annual compensation for the years 1984 through 1987 was $324,192, $420,376, $206,725 and $239,276, respectively. During this period his standard of living was lavish. The debtor and his wife jointly owned a home in Scarsdale, New York. Additionally, the debtor had a 50 percent interest in a condominium in Boston, Massachusetts. The debtor took business and pleasure trips abroad and enjoyed skiing vacations. He contributed to the support and education of his two adult daughters, one who is a medical intern and the other a teacher. The daughters received from the debtor approximately $4900 and $3200 per year as an allowance.

9. In 1978, the debtor and his wife purchased a condominium apartment in Hollywood, Florida, for the debtor's parents. The debtor's parents paid $25,000 for the down payment and the debtor financed the balance with a $50,000 mortgage loan. The debtor also made monthly payments to his parents, which amounted to about $500 per month. The debtor testified that the last time he gave cash to his parents was in January, 1987, when he gave them a check for $5000. The debtor's father is 77 years of age and his mother is 74 years of age. His parents have a bank account and savings of their own.

10. The debtor first became obligated to Continental in 1983 when the debtor's company, Intech Capital Corporation, went public and issued capital stock of the corporation. Continental advanced approximately $1,300,000 to the selling shareholders. To collateralize this transaction, the debtor pledged all of his shares to Continental. Additional financing came from Bank Leumi to the extent of approximately $250,000. The debtor made monthly payments to Continental and Bank Leumi in accordance with the financing which they furnished in 1983. Since 1984 the debtor has repaid nearly $700,000 to Continental and over $100,000 to Bank Leumi in reduction of principal and interest.

11. In August of 1987, the financial lending institutions took control of Intech Capital Corporation as a result of the Company's defaults in the payment of its obligations. The debtor was compelled to leave the employ of Intech as its chief executive officer and obtain employment as a vice president of Bell Atlantic Systems Leasing International, with an annual salary of $75,000, together with a $75,000 draw against commissions. The debtor is no longer employed by this firm, although he was so employed when he filed his Chapter 7 petition on June 3, 1988.

12. On April 28, 1988, Continental obtained a summary judgment against the debtor in the New York State Supreme Court in the sum of $1,224,414.60 with respect to the debtor's secured obligation arising out of Continental's financing the selling shareholders of Intech Capital Corporation. It appears that the pledged Intech stock is valueless and that the shareholders of Intech Capital Corporation have no equity in the company, although the creditors of Intech have received full payment of their claims in a Chapter 11 case commenced by Intech Capital Corporation.

13. Continental now focuses on the debtor's financial affairs during the twelve months immediately preceding June 3, 1988, when the debtor filed his voluntary Chapter 7 petition. As reflected in the debtor's schedules, he has two undisputed unsecured creditors: Continental in the principal amount of $1,224,414.60 and Bank Leumi in the principal amount of $150,000. Additionally, the debtor lists a disputed claim held by Intech Capital Corporation in the approximate amount of $190,000 and a contingent claim held by the Manhattan Leasing Group, Inc. Other than those four business creditors, the debtor owes no other prepetition obligations. Thus, there are no consumer obligations involved in this case.

14. The baby grand Steinway piano which was purchased in 1977 is now valued at approximately $7,000. It was purchased with funds from a joint checking account which the debtor maintained with his non-debtor wife. The piano was intended to be used by the debtor's two daughters, who studied music and who regularly played the piano while they were students residing in the family home. The debtor testified that he regarded the household furniture as belonging to his wife and that if she ever left him he would expect that his wife would claim exclusive ownership of the household furniture. Accordingly, the debtor did not list the Steinway piano separately in his schedules.

15. Similarly, the debtor did not list the three television sets as assets of his estate. The third television set, which his wife purchased during the year immediately preceding the filing of his petition, cost $515 and was a replacement for a broken set. The debtor did not regard the television sets or the household furniture as his property for bankruptcy purposes and therefore did not schedule these items because he believed that his wife would claim them as hers. However, he did not conceal the existence of these items as household furniture in an examination conducted by Continental.

16. The computer and related monitor and printer, which are valued at between $400 and $500, originally belonged to the debtor's company, Intech Capital Corporation. He was allowed to keep the equipment when he left the company. The debtor regarded the computer and related equipment as part of the household furnishings and did not specifically list these items separately from the broad category of household furnishings referred to in his bankruptcy schedules.

17. The debtor's wrist watch, which he purchased in 1966 for approximately $160, and specific items of wearing apparel and jewelry, including cuff links, were not listed separately in his bankruptcy schedules. The debtor simply listed "Usual wearing apparel" valued at approximately $500. The debtor did not conceal the existence of the wrist watch when examined by Continental.

18. On May 19, 1988, two weeks prior to the filing of the debtor's petition, the debtor was deposed by Continental's attorneys as a result of a stipulation entered into by the parties in connection with the Supreme Court action. It was disclosed by the debtor during this deposition, that he owned a Steinway Baby Grand piano, computer equipment, several television sets, cuff links and a wrist watch. Additionally, the debtor revealed that his wife had two bank accounts in her name, a checking account at Bankers Trust and a savings account with Seamens Bank, and that his wife had title to three automobiles. At the trial, Continental waived any objections with regard to the three automobiles.

19. The evidence is not sufficiently clear and convincing that the debtor knowingly and fraudulently made a false oath when he signed his bankruptcy petition and supporting schedules and statement of affairs, but failed to separately itemize the Steinway piano, television sets, computer and wrist watch. Indeed, the debtor specifically disclosed the existence of these items when he was examined by Continental in the state court deposition which was given two weeks before the debtor filed his Chapter 7 petition.

20. As to the debtor's explanation as to the deficiencies of his assets to meet his liabilities, the debtor has produced tax returns, bank statements, cancelled checks and savings account records for the past four years. The debtor's 1987 joint tax return with his wife reflected wages of $239,276, interest of $7,170, dividend income of $1,959, other income of $600 and receipts from capital sales of $89,603, for a gross total of $336,649. The debtor had federal taxes withheld in the sum of $69,696. He paid state income and real estate taxes of $33,451. He repaid Continental and Bank Leumi towards principal and interest of approximately $90,000. These repayments were generated from capital sales, primarily involving stock of Alcide Corp. which the debtor purchased for investment purposes. Additionally, the debt-

or's household living expenses amounted to approximately $9000 per month, for a total of $108,000. The debtor also paid approximately $7000 for tax preparation and taxes for a shell company called Bernard & Co. Hence, the debtor has explained where $308,147 was applied from his gross receipts. He also paid for a skiing trip for himself, his wife, and daughter. This trip had been planned the year before with friends who joined them on the vacation.

21. It does not appear that the debtor has concealed any income or assets so as to conclude that there is a failure to explain satisfactorily the deficiency of his assets to meet his liabilities. The debtor's income was substantial, as were his payments. There was no evidence that the debtor concealed his financial condition from the four creditors of the estate or that he failed to reveal where his earnings went. Although Continental may not approve of the standard of living which the debtor continued to enjoy after he discontinued payments to Continental, he did not fail to explain why there is a deficiency of assets to meet his debts. While the debtor earned over $300,000 in 1987, he also accounted for annual payments in excess of $300,000. This pattern of high income and equally high expenditures also existed in the years preceding 1987.

22. The debtor did not believe that his expenditures impaired Continental's interests because he considered Continental as fully protected to the extent of the Intech stock which it held as collateral. The debtor testified that it was his understanding that Continental relied upon the value of the Intech stock and not his personal assets when it advanced funds for the Intech public offering. Continental does not claim that the debtor fraudulently misrepresented the value of the Intech stock.

23. During the one year period immediately preceding the filing of the debtor's Chapter 7 petition, the debtor paid $88,000 to Bank Leumi and $2,000 in interest to Continental. The last payment which the debtor made to Continental was $1,000 in November, 1987. During this period the debtor continued to give one daughter $400 per month and the other $100 per month as an allowance. He also continued to give his parents an annual allowance of $5,000 per year. Additionally, the debtor spent approximately $5,000 in December, 1987 for a skiing vacation for himself, his wife and daughter. Continental alleges that these payments to the debtor's family and for their recreation were made with actual intent to hinder, delay or defraud creditors within the meaning of 11 U.S.C. § 727(a)(2)(A).

24. Continental did not produce clear and convincing evidence of the requisite fraudulent intent necessary to bar a discharge under 11 U.S.C. § 727(a)(2)(A). The debtor simply continued a pattern of lavish living to which he was accustomed over the years and which was supported by sufficient earnings to satisfy this life style. As in the case of many debtors, this debtor did not discontinue his usual pattern of spending after Continental made a demand upon him for full repayment of his obligation when it appeared that the Intech stock, which collateralized the debtor's obligation, was insufficient in value to satisfy the debt. Fraudulent intent on the part of the debtor cannot be deduced from these extrinsic facts because the debtor simply continued a pattern of living to which he was accustomed before Continental ever demanded repayment of its collateralized loan. There was no one event or transaction which can be regarded as having transpired because the debtor had his creditors in mind or because he wished to diminish his funds which might otherwise be available to pay his two undisputed creditors. The debtor would have continued to live lavishly as long as he earned substantial income. He filed his Chapter 7 petition only after Continental threatened to attach his assets.

25. Just before the debtor filed his Chapter 7 petition on June 3, 1988, he opened a bank account with the Union Trust Company in Stamford, Connecticut, where his place of employment was located. The account was opened in the name of his wife, Phillis Bernard, in trust for the debtor, who was named as the beneficiary. The debtor's wife testified that the account

was opened so that she could continue to pay the family bills because their New York bank put a freeze on their joint account. The funds for the Union Trust account came from the debtor's salary check because he did not have access to his New York bank account. The debtor listed $1,500 on Schedule B–2(b), which calls for a listing of the value of "Deposits of money with banking institutions, savings and loan associations, credit unions, public utility companies, landlords, and others." The debtor did not list the names of the institutions where the funds were on deposit. The space calling for the location of the listed personal property was left blank.

26. Although Continental's complaint does not refer to the Union Trust account in its allegations of fraud, this issue did come up during the trial. However, there is no clear and convincing evidence that the debtor intended to conceal his interest in his wife's account or that he knowingly and intentionally made a false oath when he listed the net amount of his bank accounts, but did not insert the names and addresses of the banks where the accounts were maintained. The information as to the existence of the bank accounts was supplied by the debtor when he was examined. There was no evidence that the debtor gave false information as to the whereabouts of his bank accounts or that he gave false information as to the bank account which his wife maintained and in which he was a named beneficiary.

27. The Union Trust account in the debtor's wife's name was opened after the debtor's petition was prepared by his attorneys and was to be used to pay his family's ongoing living expenses. Except for the opening amount, any subsequent deposits came from the debtor's postpetition income. The debtor testified that the total amount available in his New York bank accounts and in his wife's Union Trust account amounted to approximately $1,500 at the time of the filing of the petition, because there must be deducted from the gross amount the amounts represented by checks outstanding which had been drawn on the account. However, the $1,500 figure which was listed in the schedules could

not have reference to the Union Trust account because the debtor's petition was prepared before the Union Trust account was opened. The debtor's wife's checking account was intended to be a postpetition account for the payment of their bills, except that it was opened just before the petition was filed, but after the petition had been prepared. The initial deposit of funds which were derived from the debtor's salary was technically property of the estate and should have been listed. The subsequent deposits were derived from postpetition salary and need not be stated because postpetition salary is not property of the debtor's estate. The debtor should have amended his previously prepared petition to reflect the fact that the initial deposit of salary into his wife's account, and in which he had a beneficial interest, represented funds belonging to the estate.

28. Continental has neither alleged nor proved by clear and convincing evidence that the debtor knowingly and intentionally made a false oath when he signed his petition and did not list the Union Trust account which his wife opened for the purpose of paying postpetition ongoing family obligations.

### DISCUSSION

There are certain general rules which apply to all objections to discharge under 11 U.S.C. § 727 and there are some specific requirements which a plaintiff must establish with regard to each of the grounds delineated under this section.

■■■ Objections to a discharge must be construed strictly against the objectant and liberally in favor of the debtor because the relief afforded in bankruptcy cases was intended to permit an honest debtor to obtain a fresh start free from debt. *Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d 999, (2d Cir.1976), *In re Kokoszka*, 479 F.2d 990, 996 (2d Cir.1973), *aff'd sub nom Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 *reh. denied*, 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed. 2d 131 (1974); *In re Tabibian*, 289 F.2d 793, 795 (2d Cir.1961). Bankruptcy Rule

4005 directs that at all times during the trial the plaintiff objecting to a discharge has the burden of proving the objection. Although the burden of proof or persuasion must be borne by the plaintiff, once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden thereafter shifts to the debtor to provide additional evidence reflecting a satisfactory explanation to rebut the plaintiff's *prima facie* case. *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985); *First Federated Life Insurance Co. v. Martin (In re Martin)*, 698 F.2d 883, 887 (7th Cir.1983); *Camacho v. Martin (In re Martin)*, 88 B.R. 319, 321 (D.Colo.1988); *In re Delancey*, 58 B.R. 762 (Bankr.S.D.N.Y.1986). However, the plaintiff must bear the ultimate burden of persuasion by proving all of the essential elements necessary to bar a discharge by clear and convincing evidence. *In re Martin*, 88 B.R. at 321; *In re Mayo*, 94 B.R. 315 (Bankr.D.Vt.1988); *In re Shapiro*, 59 B.R. 844, 847 (Bankr.E.D.N.Y.1986); *In re Delancey*, 58 B.R. at 770; *In re Switzer*, 55 B.R. 991, 999 (Bankr.S.D.N.Y.1986).

## FALSE OATH

Continental charges that the debtor omitted from his schedules and Statement of Affairs items of nonexempt property, gratuitous payments to his daughters and parents and that such omissions established that his petition and Statement of Affairs were products of a false oath within the meaning of 11 U.S.C. § 727(a)(4)(A). This section bars a discharge if a debtor knowingly and fraudulently made a false oath or account in, or in connection with, a bankruptcy case.

In order to obtain a discharge, a debtor must reveal and not conceal his or her financial condition because complete disclosure is the touchstone in a bankruptcy case. *In re Underhill*, 82 F.2d 258, 259–260 (2d Cir.1936), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1986); *In re Greene*, 81 B.R. 829 (Bankr.S.D.N.Y.1988); *In re Lubin*, 61 B.R. 511, 513 (Bankr.S.D.N.Y.1986); *In re Delancey*, 58 B.R. at 768; *In re Switzer*, 55 B.R. at 997; *In re Silver-*

*man*, 10 B.R. 727, 731 (Bankr.S.D.N.Y. 1981). A debtor's concealment of assets with intent to hinder, delay or defraud creditors within one year before the date of the petition will result in the denial of a debtor's discharge, as directed by 11 U.S.C. § 727(a)(2)(A). Such concealment may also lead to a denial of the debtor's discharge when the items should have been listed in the petition and Statement of Affairs, because a debtor is obliged to answer the sworn statements in the petition and supporting schedules honestly and truthfully. A debtor's dishonest statements in a bankruptcy petition or Statement of Affairs may constitute a false oath within the meaning of 11 U.S.C. § 727(a)(4)(A).

In order to deny a debtor's discharge because of a false oath, the debtor must have made a statement under oath which the debtor knew to be false and with intent to defraud. Additionally, the false oath made by the debtor must have related to a material matter. *Williamson v. Fireman's Fund Insurance Company*, 828 F.2d 249, 251 (4th Cir.1987); *Chalik v. Moorefield, (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984); *In re Martin*, 88 B.R. at 323; *In re Shapiro*, 59 B.R. at 849. A debtor's omission of items without intent to conceal them from creditors, due either to inadvertence or because the property is not the type that comes to mind when listing one's disposable property, would not constitute a knowingly false statement under oath made by a debtor with intent to defraud creditors. *See In re Woodlands Investment Associates*, 95 B.R. 681, 682 (Bankr.W.D.Mo.1988). Whether or not a debtor has made a false oath within the meaning of 11 U.S.C. § 727(a)(4)(A) is a question of fact. *Williamson v. Fireman's Fund Insurance Company*, 828 F.2d at 251.

In the instant case it appears that the debtor revealed all of the transactions referred to in Continental's complaint when Continental deposed the debtor two weeks before he filed his Chapter 7 petition. Continental, which is the debtor's largest undisputed creditor (the debtor has two undis-

puted creditors out of four listed creditors; all with respect to the Intech transaction) was fully apprised of the debtor's yearly payments to his family and his annual skiing vacation trips. The debtor also disclosed to Continental that the household furnishings which he and his wife possessed included a Steinway baby grand piano, a computer and three television sets. Additionally, the debtor informed Continental that he owned a wrist watch which he purchased many years ago for $160. Indeed, Continental examined the debtor in the state court deposition as to each of these items.

The debtor satisfactorily explained why he did not separately list these items of household property in his petition and why he did not regard the allowance payments which he regularly made to his daughters and parents during the past five years or more as reportable transfers of property. Manifestly, there was no clear and convincing proof that the debtor actually intended to defraud his two undisputed creditors, nor will the court deduce such fraudulent intent from the evidence that was adduced at the trial.

## EXPLANATION AS TO LOSSES OR DEFICIENCIES

A debtor's discharge may be denied under 11 U.S.C. § 727(a)(5) if "the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities." Section 727(a)(5) does not require fraudulent intent, as under some of the other subdivisions in 11 U.S.C. § 727. *Suttles v. Suttles (In re Suttles)*, 819 F.2d 764, 766 (7th Cir.1987). After the plaintiff presents proof that the debtor possessed assets which are not listed in the petition, the debtor must satisfactorily explain what happened to such assets. The debtor must explain the loss or deficiency of assets and why such a loss occurred. *First Federated Life Insurance Co. v. Martin (In re Martin)*, 698 F.2d at 886. The debtor's explanation should convince the court of his or her good faith and businesslike conduct. *In re White*, 63 B.R. 742, 745 (Bankr.N.D. Ill.1986); *In re Shapiro*, 59 B.R. at 853.

The debtor in the case at bar produced all his financial records for the past four years which revealed that while he earned over $200,000 each year, he spent an equal amount to support his standard of living, including substantial repayments to his two undisputed creditors and satisfaction of federal and state tax obligations. After the debtor offered proof as to his expenditures, Continental did not offer any evidence to contradict the debtor's evidence or to show that the debtor's explanation was unsatisfactory. At most, the evidence reveals that the debtor failed to recognize that his impending financial crisis arising out of the acceleration of his indebtedness to Continental did not justify a continuation of the style of living to which the debtor was accustomed over the years. The debtor continued to support himself and his family in the same fashion to which he was accustomed before he pledged his Intech stock to Continental. The Intech Chapter 11 petition should have been a meaningful signal to the debtor that the pledged stock would not be sufficient to satisfy Continental's claim and that his obligation to Continental would be accelerated, with the result that Continental would look to the debtor's personal assets for satisfaction. That the debtor did not tighten his belt in the face of a financial downturn does not mean that the debtor failed to explain where his annual income went.

## TRANSFERS WITH INTENT TO DEFRAUD

Continental's third count implicates 11 U.S.C. § 727(a)(2), which bars a discharge for transfers or concealment by a debtor with actual intent to defraud. This section provides:

[T]he debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

■ The requisite intent to hinder, delay or defraud must be actual intent; constructive or presumed fraudulent intent cannot be the basis for the denial of a discharge. *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d at 757; *Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 (2d Cir.1976). Before the existence of any actual fraudulent intent can be found, there usually must be shown some facts or circumstances which are extrinsic to the debtor's conduct and which are indicative of such actual fraudulent intent. *Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d at 1004. Hence, a transfer or concealment of assets, without more, is not enough to deny a discharge; there must be a showing of actual intent to hinder, delay or defraud creditors. *In re Irving*, 27 B.R. 943, 945–946 (Bankr. E.D.N.Y.1983); *In re Rubin*, 12 B.R. 436 (Bankr.S.D.N.Y.1981). However, because a debtor generally does not admit the existence of such actual intent, this element must be established through inferences that might be drawn from a course of conduct which reflects a clear and convincing scheme on the part of a debtor to hinder, delay or defraud creditors. *Federal Texas Savings Association v. Reed (In re Reed)*, 700 F.2d 986, 991 (5th Cir.1983); *Farmers Co-op Association of Talmage, Kansas v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982).

■ The debtor's payments to his daughters and parents over a period of many years and his annual skiing vacations are not like the single instance transfers within the year preceding bankruptcy which occurred in *In re White*, 63 B.R. 742 (Bankr.N.D.Ill.1986), where the debtor disposed of proceeds from the sale of a business. Nor is the debtor's conduct similar to the single instance transfer of the debtor's home to his wife in *In re Rubin*, 12 B.R. 136. Moreover, the transfer of a debtor's funds to pay her daughter's auto loan

and a vacation to Europe in *In re Lubin*, 61 B.R. 511 were also single instance events which were undertaken by the debtor because she said that she did not want the funds to go to her creditors. There was no prior pattern of payments or vacations at times when the debtor did not have her creditors in mind.

In the instant case, for many years before he filed his Chapter 7 petition, the debtor made substantial payments to his daughters and parents in the form of monthly and annual allowances for their support. Additionally, he annually took skiing vacations with his family. There was no proof that when he continued to make the usual payments to his family and when he took a skiing vacation in Utah, he did so with the express intent to tap his assets to the detriment of his creditors. The debtor simply continued a pattern of living to which he was accustomed until he learned that Continental, his largest creditor, after accelerating his indebtedness and obtaining a summary judgment in state court, was going to attach his bank accounts. The debtor then went to his lawyer who prepared a Chapter 7 petition for use in the event that an acceptable payout program could not be negotiated with Continental. When the debtor could not arrange a satisfactory program with Continental, he then signed and filed the petition that had been prepared previously.

■ The most disturbing point is the Union Trust bank account in Connecticut which the debtor's wife opened in her name, but in trust for the debtor and for his convenience. The testimony reveals that this checking account was opened so that the ongoing bills of the debtor and his wife might be paid from an account after the debtor's existing bank accounts would be attached and after the debtor filed his petition. However, the Union Trust account was opened just before the debtor filed his petition, but with funds from his salary and not from funds transferred from the debtor's frozen bank account. Although the debtor did not amend his petition to list this account, his wife freely admitted the details as to this account

when she was examined by Continental in a Rule 2004 examination. Thereafter, even though Continental was aware of the details as to the Union Trust account, it did not specify in its complaint the existence of this account as a ground for barring the debtor's discharge. This account was brought into issue only after the debtor's wife again testified as to this account at the trial, at which time the court asked some additional questions concerning the Union Trust account. The inferences drawn from the facts regarding this account are not sufficiently clear and convincing to lead to a finding that the debtor actually intended to hinder, delay or defraud his creditors when his wife opened the account in Connecticut with family money. This finding is especially compelling in light of the fact that objections to a discharge must be construed strictly against the objectant and liberally in favor of the debtor. *See Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d at 1003.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(I).

2. The plaintiff has failed to sustain its burden of proving by clear and convincing evidence that the debtor made a false oath within the meaning of 11 U.S.C. § 727(a)(4)(A).

3. The plaintiff has failed to sustain its burden of proving by clear and convincing evidence that the debtor failed to explain satisfactorily losses or deficiencies of his assets to meet his liabilities within the meaning of 11 U.S.C. § 727(a)(5).

4. The plaintiff has failed to sustain its burden of proving by clear and convincing evidence that the debtor has made transfers with intent to hinder, delay or defraud creditors, as proscribed under 11 U.S.C. § 727(a)(2).

5. The debtor is entitled to a dismissal of the complaint filed by Continental and to a discharge in bankruptcy.

SETTLE ORDER on notice.