In re Marshall CRAIG, Debtor.

**BENEFICIAL MORTGAGE COMPANY, Plaintiff,**

v.

**Marshall CRAIG, Defendant.**

**Bankruptcy No. 91–30034.
Adv. No. 91–3133.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

March 31, 1992.

Richard J. Szczepaniak, Toledo, Ohio, for plaintiff.

John Gustafson, Toledo, Ohio, for defendant.

## OPINION AND ORDER DISCHARGING DEBT AND GRANTING DISCHARGE

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter came on for trial upon plaintiff's complaint to determine dischargeability pursuant to 11 U.S.C. § 523, alleging fraud, embezzlement and larceny, and/or objection to discharge pursuant to 11 U.S.C. § 727, alleging failure to preserve records and to explain satisfactorily the loss of assets. Upon consideration of the evidence adduced at trial, the court finds that the debt owed plaintiff from defendant should be discharged and that defendant should be granted a discharge.

## FACTS

Debtor/defendant filed a voluntary petition under chapter 7 of title 11. Thereafter, on April 11, 1991, plaintiff filed the instant complaint to determine dischargeability and/or to object to discharge. Plaintiff states that it is a creditor of defendant as a result of a revolving line of credit extended defendant on August 16, 1988, the balance of which was $3,562.52 on the date of defendant's petition. Plaintiff alleges that defendant obtained money and credit from plaintiff through fraud, embezzlement and/or larceny; that he concealed, destroyed, mutilated or failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained; and that he has failed to explain satisfactorily the loss of assets or deficiency of assets to meet his liabilities.

Mr. Mark Mathews, employed by plaintiff as a branch manager in Marion, Ohio, testified that he reviewed defendant's loan application of August 15, 1988 for a home improvement loan. Plaintiff's Exhibit A. According to Mr. Mathews, the factors he considered in determining whether to recommend approval of an applicant's request for a loan include: time on the job, the ratio of an applicant's income versus debt, and the status of an applicant's home ownership. Defendant, in applying for a loan with plaintiff, listed income of $1,700 per month from Whirlpool Corp. and other income of $750 per month from Smada Investments. *Id.* Mr. Mathews testified that this additional income, from Smada, was factored into his assessment of defendant's credit worthiness, although Mr. Mathews did not verify this employment. Mr. Mathews forwarded his approval of defendant's application to his district manager who also approved the line of credit in

the amount of $3,500. Plaintiff's Exhibit C.

Mr. Mathews informed the court that defendant received the loan proceeds in a lump sum of $3,485. Plaintiff's Exhibit B. Blank checks were issued to defendant, permitting him to access the line of credit. Defendant paid this account down to a zero balance in December, 1988, but defendant in February and March, 1989, reaccessed the account in the amount of $3,475. On May 25, 1989, defendant paid $1,900 on the account, but this check was returned to plaintiff for insufficient funds. Plaintiff's Exhibit E. By June 27, 1989, defendant paid the $1,900 previously tendered. However, to date, defendant owes plaintiff $3,562.52.

Defendant testified that he was promised a job with Smada Investments, sometime in July, 1988, and a compensation of $750 per month. Smada Investments, according to defendant, was formed to purchase distressed properties and after rehabilitation, resell them for a profit. Defendant's sister-in-law who had been married to defendant's brother for some 25 or 30 years, Jackie Craig, told defendant, and other family members, that she was the chief operating officer of Smada. Defendant stated that his association with Smada was as an investor. That is, although he accompanied Ms. Craig to banking institutions to request information on pending foreclosures, he had no other contacts with that company. Defendant did not enter into an employment contract with Smada nor receive compensation from Smada.

After receiving the loan proceeds from plaintiff, defendant testified that he purchased materials for improving the exterior of his residence; to his knowledge, the loan proceeds were not given to Smada. Defendant stated that he paid plaintiff in full, December, 1988, by consolidating several loans, including plaintiff's loan and several credit cards accounts. A second mortgage was granted in order to obtain these funds. Defendant opined that consolidation of several loans was cheaper and necessary until Smada became more profitable.

Defendant admitted that he began investing in Smada in July, 1988. He opined that his investments totaled approximately $18,000. These funds were given to Ms. Craig, as investments, after she spoke with defendant and other family members at family gatherings. She convinced defendant, and he believed, that the concept upon which Smada's profits would be based was feasible. The $18,000 given Ms. Craig, according to defendant, came from his personal monies and from cashing in an insurance policy; these funds were paid to Ms. Craig over a period of time. Defendant stated that Ms. Craig requested that the investments be by cash. Ms. Craig told defendant that she would maintain an accounting of the amounts received. Defendant deferred to Ms. Craig on financial matters and, in fact had previously requested her assistance in preparation of his income tax returns and in obtaining a mortgage for his residence. He believed her to be trustworthy and business minded.

Defendant informed the court that his mother had also invested approximately $10,000 in Smada, without receiving any return. Defendant's sister also invested, although defendant was unaware of the amount.

## DISCUSSION

### Section 523

Plaintiff seeks to except defendant's debt due it from discharge as it was obtained through fraud, embezzlement or larceny. 11 U.S.C. § 523(a)(4). Initially, the court notes that:

[t]he overriding purpose of the bankruptcy laws is to provide the bankrupt with comprehensive, much needed relief from the burden of his indebtedness by releasing him from virtually all of his debts....

To that end, exceptions to discharge are narrowly construed against the creditor and in favor of the bankrupt.

*In Re Harrell,* 94 B.R. 86, 90, 18 B.C.D. 913 (Bkrtcy.W.D.Tex.1988) (citations omitted). *See also In Re Mullins,* 64 B.R. 287 (Bkrtcy.W.D.Va.1986) (courts are required to view the evidence strictly against the

creditor and liberally in favor of the Debtor). Furthermore,

> intent to defraud is an intention to deceive another person, and to induce such other person, in reliance upon the deception to assume, create, transfer, alter or terminate a right or obligation with reference to property.

*Harrell,* 94 B.R. at 91.

■ The court finds plaintiff has failed to establish defendant's fraudulent intent. Defendant candidly and credibly testified regarding his financial matters. He stated that he paid the balance on the loan received from plaintiff by obtaining a second mortgage. He also convincingly testified that he reaccessed the account to pay outstanding bills. Furthermore, the court cannot find that plaintiff relied upon the additional income listed by defendant in the loan application. Defendant listed that income for one month; Mr. Mathews testified that he did not verify this income. The court finds that defendant was without the requisite fraudulent intent necessary for excepting a debt from discharge.

■ Section 523(a)(4) also excepts a debt from discharge for larceny, defined as the wrongful taking and carrying away of another's property with intent to convert that property, without the owner's consent and to permanently deprive the owner thereof. *In Re Piscioneri,* 108 B.R. 595, 602 (Bkrtcy.N.D.Ohio 1989). Plaintiff has failed to demonstrate, by even a preponderance of the evidence, *see Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), that defendant wrongfully took plaintiff's money. Plaintiff has not convinced the court that defendant wrongfully converted those funds, without plaintiff's consent with the intent to permanently deprive plaintiff thereof.

Furthermore, plaintiff extended defendant a line of credit. Plaintiff's Exhibit B. Defendant's application references that the purpose of the loan was "home improvement." Plaintiff's Exhibit A. The court finds that such a line of credit cannot be transformed into something more. See *Mullins,* 64 B.R. 287 (line of credit, payable upon demand, secured by floor plan for used car business, cannot be transformed into a trust arrangement by implication). The court cannot find that plaintiff has demonstrated a larcenous taking.

■ The basic elements of establishing an exception to discharge for embezzlement are "that property is acquired lawfully with the consent of the owner, the property is appropriated for the embezzler's own use, and some form of fraud or deceit is employed." *In Re Sinchak,* 109 B.R. 273, 276 (Bkrtcy.N.D.Ohio 1990). *See also In Re Johann,* 125 B.R. 679 (Bkrtcy. M.D.Fla.1991) (embezzlement is defined as the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come (quotation omitted)); *In Re Valentine,* 104 B.R. 67 (Bkrtcy.S.D.Ind.1988) (for purposes of determining dischargeability, embezzlement is defined as fraudulent, or knowing and willful, misapplication or conversion of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come). Thus, the elements necessary for proving embezzlement are:

> (1) property of another was entrusted to the Debtor;
>
> (2) the Debtor appropriated the property for a use other than that for which it was entrusted; and
>
> (3) the circumstances indicate fraud.

*In Re Burgess,* 106 B.R. 612, 621, 21 C.B.C.2d 1310 (Bkrtcy.D.Neb.1989) (citation omitted). *See also In Re Imbody,* 104 B.R. 830, 841 (Bkrtcy.N.D.Ohio 1989) (embezzlement has been held to require two elements which must be proven: (1) that the Debtor appropriated funds for his own benefit and (2) that the Debtor did so with fraudulent intent or deceit).

Again, the court is unconvinced that plaintiff has demonstrated fraud sufficient for excepting the debt from discharge. Plaintiff, to prove embezzlement has

· to prove more than just the fact that [Debtor] used the sales proceeds to pay off his personal debts; he had to prove that [Debtor] did so with fraudulent intent.

*Matter of Weber*, 892 F.2d 534, 539 (7th Cir.1989). The court cannot make such a finding. Plaintiff's cause of action under § 523(a)(4) must fail.

*Section 727*

 Plaintiff also requests that defendant's discharge be denied as he has failed to preserve any recorded information from which his financial condition may be ascertained. 11 U.S.C. § 727(a)(3). Initially, Bankruptcy Rule 4005 imposes upon plaintiff the burden of proving its objection. Additionally, as previously noted, the Bankruptcy Code was enacted in order to "permit the honest Debtor to get a new start in life free from debt." *Ofc. of the Comptroller General v. Tractman*, 107 B.R. 24, 25–6 (S.D.N.Y.1989). *See also In Re Graham*, 111 B.R. 801, 805 (Bkrtcy.E.D.Ark. 1990) (the discharge in bankruptcy is the foremost remedy to effectuate the fresh start which is the goal of bankruptcy relief to Debtor). Once plaintiff has satisfied its burden of proving the elements under § 727(a)(3), the burden shifts to defendant to justify his actions. *See In Re Martin*, 124 B.R. 542, 545 (Bkrtcy.N.D.Ind.1991) (citations omitted).

The purpose of § 727(a)(3):
is to ensure that the trustee and creditors receive sufficient information to trace a Debtor's financial history for a reasonable period past to present.

*In Re Trogdon*, 111 B.R. 655, 658 (Bkrtcy. N.D.Ohio 1990) (citations omitted). *See also Graham*, 111 B.R. at 806 (§ 727(a)(3) requires that Debtor present sufficient written evidence that will enable creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past); *In Re Rusnak*, 110 B.R. 771, 775 (Bkrtcy.W.D.Pa.1990) (the main thrust of objections to discharge is to furnish a vehicle whereby abusive conduct by Debtor can be dealt with through denial of discharge); *In Re Zell*, 108 B.R. 615, 627 (Bkrtcy.S.D.Ohio 1989) (the purpose of § 727(a)(3) is to assure the trustee and creditors that they will be provided with sufficient information with which they can assess Debtor's estate and general finan-

cial posture); *In Re Dias*, 95 B.R. 419, 422 (Bkrtcy.N.D.Tex.1988) (the records must at least reasonably allow for reconstruction of Debtor's financial condition).

In order to prevail, plaintiff must establish:
1) that Debtor failed to keep or preserve books or records;
2) that such failure makes it impossible to ascertain Debtor's financial condition and material business transactions.

*Rusnak*, 110 B.R. at 775 (citation omitted). "The adequacy of Debtor's record must be determined on a case by case basis." *Trogdon*, 111 B.R. at 658.

Once the objector has established the inadequacy of Debtor's records, the burden shifts to Debtor to establish any justification therefor. *Trogdon*, 111 B.R. at 658; *Graham*, 111 B.R. at 806. The court must, then, determine whether factually Debtor's failure was justified. *Rusnak*, 110 B.R. at 776. *See also In Re Benningfield*, 109 B.R. 291, 293 (Bkrtcy.S.D.Ohio 1989) (case law and the court's independent assessment of the requirements to establish an action under § 727(a)(3) also indicate that Debtor's explanation regarding any deficiency in his record must be evaluated both for its credibility and reasonableness under the circumstances of Debtor's affairs and degree of sophistication and for the materiality of any insufficiency); *Zell*, 108 B.R. at 627 (objector must demonstrate that reasonable grounds exist to believe that Debtor kept inadequate records of all business transactions; the court will view the adequacy of Debtor's books and records on case by case basis, considering Debtor's occupation, business and personal financial structure); *In Re Hubbard*, 96 B.R. 739, 18 B.C.D. 1347 (Bkrtcy.W.D.Tex.1989) (§ 727(a)(3) requires that Debtor take such steps as ordinary fair dealing and common caution dictate to enable creditor to learn what he did with his estate).

As previously discussed, the court finds that defendant credibly and candidly answered plaintiff's allegations. He stated that he failed to keep records of his transactions with Smada and Ms. Craig as she told him she would maintain an accounting.

Defendant had previously relied upon her in some of his own personal financial matters. Additionally, defendant explained to the court that he reaccessed the account in order to meet his expenses. The court does not believe defendant to be a sophisticated businessman nor a deceiving individual. Based upon the totality of the circumstances, the court finds that plaintiff, again, has failed to carry its burden of proof in seeking a denial of defendant's discharge. *See In Re Cox*, 904 F.2d 1399 (9th Cir.1990) (the court may consider Debtor's reliance on her husband in determining whether her failure to keep records was justified under all the circumstances; in any business relationship involving more than one person, the "partners" will usually delegate responsibilities, including record keeping, among themselves).

Furthermore,

[t]his case does not present a picture of a Debtor who had no records or who refused to produce necessary records in his possession. The court is convinced that this Debtor ... [has] been candid with the court and that no evidence has surfaced that would indicate there is any "hidden agenda" or indeed any deficiency in their records which is either material or relevant to the Debtor's bankruptcy estate or to the issuance of is discharge in bankruptcy.

*Benningfield*, 109 B.R. at 294.

■ Plaintiff also seeks denial of defendant's discharge alleging that "the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the Debtor's liabilities." 11 U.S.C. § 727(a)(5). Under this section, once plaintiff has made "a prima facie case of loss of assets, the burden to satisfactorily explain this loss shifts to the Debtor." *Hubbard*, 96 B.R. at 742. *See also In Re Bernard*, 99 B.R. 563, 571 (Bkrtcy.S.D.N.Y.1989) (after plaintiff presents proof that Debtor possessed assets which are not listed in the petition, Debtor must satisfactorily explain what happened to such assets).

Satisfactory

"may mean reasonable, or it may mean that the court, after having heard the

excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation—he believes what the bankrupts say with reference to the disappearance or shortage. He is satisfied. He no longer wonders. He is contented."

*Trogdon*, 111 B.R. at 659 (citations omitted). *See also Bernard*, 99 B.R. at 571 (Debtor's explanation should convince the court of his good faith and businesslike conduct).

Lastly,

[w]hile the Debtor must provide the court with more than mere generalized, vague, and uncorroborated statements in oral testimony, the Code provision does not dictate denial of discharge for failure to produce corroborating papers where the Debtor's testimonial assertions bear sufficient credibility.

\* \* \* \* \* \*

.... The plaintiff's contention under § 727(a)(5) rests on the Debtor's alleged failure to account for or to be forthcoming with information relating to all aspects of the business enterprise, including the business records. The court, contrary to the plaintiff's assertions, found the Debtor willing to explain the business operation and provide the court with as much information as she, herself, possessed. The Debtor was exceedingly honest and straightforward in her testimony. As such, the court finds the Debtor satisfactorily explained all issues brought into contention by the plaintiff.

*Zell*, 108 B.R. at 629, 629–30 (citations omitted). The court was convinced by defendant's testimony that given the totality of the circumstances, he is exculpated from the misdeeds alleged by plaintiff. *See id.* Although failure to obtain receipts for his investment is not to be condoned, the court will not impose the harsh measure of denial of a discharge as a result of defendant's failure; furthermore, the court finds defendant's testimony credible in explaining his resulting financial condition. In light of the foregoing, it is therefore

ORDERED that defendant's discharge be, and it hereby is, granted. It is further

ORDERED that the defendant's debt due plaintiff be, and hereby is, discharged. It is further

ORDERED that plaintiff's complaint to determine dischargeability pursuant to 11 U.S.C. § 523 and/or objection to discharge pursuant to 11 U.S.C. § 727 be, and hereby is, dismissed with prejudice.