**In re Josef and Marie LAH, aka Josef's Hair Design, aka Future Directions—Josef's, Debtors.**

**Marvin SICHERMAN, Trustee, Plaintiff,**

v.

**Josef LAH and Marie Lah, Defendants.**

**Bankruptcy No. B85–02872.
Adv. No. B87–0611.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

July 1, 1988.

Mark Schlachet, Cleveland, Ohio, Charles Hall, Mentor, Ohio, for debtors/defendants.

Richard Baumgart, Michael Arnovitz, Cleveland, Ohio, for trustee/plaintiff.

Richard Kleinman, Cleveland, Ohio, for Ameritrust Co.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court upon the Complaint of the Trustee objecting to discharge of the above-styled Debtors. A trial was held with due notice having been made upon all parties entitled thereto. After reviewing the testimony, admitted evidence, and the record of this matter, the following constitutes the Court's findings and conclusions pursuant to Rule 7052, Bankr.R.:

### I.

This adversary matter is a core proceeding pursuant to provisions of 28 U.S.C. 157(b)(2)(J), with jurisdiction further conferred under 28 U.S.C. 1334 and General Order No. 84 of this District. The Debtors, Josef and Marie Lah, filed a voluntary petition seeking relief under Chapter 11 on November 12, 1985. Subsequently, on February 2, 1987, their case was converted for proceedings under Chapter 7 after unsuccessful efforts to obtain confirmation of a plan of reorganization under Chapter 11. Prior to seeking relief under Chapter 11, and within one year of that petition filing date, the Debtors caused to be formed a corporation known as Lah, Inc. The sole shareholders of Lah, Inc. were two children of the Debtors who were the only authorized signers on the bank account of Lah, Inc. (JX-2; Marie Lah, X-EX.) The only assets of Lah, Inc. were the personal funds of the Debtors which were deposited into the corporate checking account for payment of the Debtor's personal and family expenses (Marie Lah, X-EX.) The source of the monies deposited in the Lah, Inc. bank account was principally Josef Lah's paycheck which he received from the Debtors' beauty shop business known as Josef's Hair Design (JHD) and from monies received from third parties (Marie Lah, X-EX.)

Upon conversion to Chapter 7, a trustee was duly appointed, and the Debtors were subsequently examined at the first meeting of creditors. This adversary proceeding ensued therefrom.

### II.

In support of his Complaint objecting to a discharge of the Debtors, the Trustee avers that (1) Lah, Inc. was formed by the Debtors, within one year of seeking Chapter 11 relief, for the purpose of transferring property to that entity to hinder, delay and defraud the Debtors' creditors so that assets could be placed beyond the reach of such creditors; (2) the Debtors failed to disclose the existence of Lah, Inc. in information contained in their bankruptcy schedules or at the § 341 meeting of creditors upon examination; (3) Debtors scheduled as an estate asset a purported corporation known as Renbow, Inc., which is not a separate corporation and has never had a separate corporate existence, but has been utilized for the purpose of hindering and defrauding creditors and the Trustee from obtaining assets used by that business; and, (4) upon conversion to Chapter 7, the Debtors continued to operate a business utilizing estate assets without the knowledge, consent or permission of the Trustee or the Court.

In response to those Complaint allegations, the Debtors, *inter alia*, admitted that (1) Lah, Inc. was formed within one year of their filing for protection under Chapter 11; (2) two of the Debtors' children were authorized signers on the Lah, Inc. checking account; (3) funds in the Lah, Inc. account were used to pay family and household expenses and that such funds were either Josef Lah's earnings or were borrowed funds; (4) neither the bankruptcy schedules nor the Debtors' § 341 meeting

examination disclosed the existence of Lah, Inc. or their actions; (5) they scheduled Renbow, Inc. stock as an estate asset; (6) Renbow, Inc. is not a corporation; (7) Josef Lah operated his beauty salon post-conversion and used estate assets which they contend were subject to State law exemptions. In all other respects, the Debtors denied the several Complaint allegations.

### III.

Section 727 of the Bankruptcy Code [11 U.S.C. 727] addresses the issuance of a discharge under Chapter 7 proceedings. In pertinent part, § 727(a) provides:

§ 727. Discharge.

(a) The court shall grant the debtor a discharge, unless

... (2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate after the date of the filing of the petition;

In other respects, § 727 provides:

727(a) The court shall grant the debtor a discharge, unless

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

Pursuant to Rule 4005, Bankr.R., the burden of proof in objecting to a discharge is upon the Plaintiff. That burden must be established by clear and convincing evidence. *In re Lineberry*, 55 B.R. 510, 511 (Bankr.W.D.Ky.1985); *In re Cohen*, 47 B.R. 871, 874; 12 B.C.D. 1210 (Bankr.S.D. Fla.1985)[1] Further, to discern whether the requirements of § 727(a)(2) and (4) have

been sustained, the Court necessarily must consider the evidence and adduced testimony to determine whether the element of intent was sufficiently established, as well as determining whether the debtor knowingly and fraudulently committed the proscribed acts.

### IV.

*Lah, Inc.:*

Within one year prepetition, the Debtors formed, or caused to be formed, Lah, Inc.. It had no corporate purpose other than to pay the family expenses of the Debtors (Marie Lah, X–EX.), and was formed within one year of the Debtors' filing for protection under Chapter 11. Although two of the Debtors' children were the sole shareholders of Lah, Inc., the Debtors nevertheless maintained control of the funds in the Lah, Inc. checking account through forgery of the daughter's signature or through a power of attorney allegedly granted by the children shareholders (Marie Lah, X–EX.).[2] Further, the Debtors directly benefitted from the creation of Lah, Inc. as the monies funneled through its checking account were used to pay solely their personal and family expenses (Marie Lah, X–EX.; PX–7, 8 and 9). The principal monies deposited into the Lah, Inc. account were Joseph Lah's paychecks received from his beauty salon business known as Josef's Hair Design. Other sums of monies derived from the Debtors' hair salon business were also deposited into the Lah, Inc. account (Testimony, Tina Berki). Other monies deposited to the account were gifts or loans from friends (Testimony, Marie Lah); however such loans and gifts were never reflected in the Debtors' monthly operating reports preconversion. Prior to the incorporation of Lah, Inc., the Debtors opened a bank account at Huntington National Bank (HNB) in the name of Lahko Co. (AKA Lahko, Inc.), with an account number being

---

1. *See also*, 4 Collier ¶ 727.14 at 727–102 (15th Ed.1988).

2. No power of attorney was exhibited to the Court or the Trustee in support of this contention by the Debtors. Although Marie Lah stated she had a power of attorney to sign checks for her daughter, it is of interest that she signed her daughter's name (Marie Victoria Lah) on the check and not her own. (*See*, PX–25, Testimony, Marie Lah).

# 0166–700512–0. (Marie Lah, Testimony). Upon the incorporation of Lah, Inc., the Lahko Co. bank account at HNB (# 0166–700512–0) became the bank account for Lah, Inc. (*See,* JX–3, JX–4, JX–5; PX–7—PX–26; Testimony, Marie Lah). Further, said bank accounts were not disclosed at the § 341 meeting of creditors at the commencement of the case or at the § 341 meeting postconversion. (*See,* PX–4, PX–5; Testimony, Marie Lah; Testimony, Marvin Sicherman). The record is clear to reflect that the corporate existence of this entity was never revealed to the Trustee (Direct Ex., Marvin A. Sicherman, Trustee; and PX–2 and PX–4). No corporate minute books, records or other formal corporate instruments existed for Lah, Inc., other than Articles of Incorporation which were filed with the State of Ohio. The testimony further revealed that the corporation never filed a tax return (Marie Lah, X–EX.). The Debtors stipulated during this adversary proceeding that there was such nondisclosure. Such stipulation, although made, does not diminish the fact that the nondisclosure occurred nor does it diminish its effect of delaying and hindering an orderly liquidation of their estate. Further, the reasons offered for the nondisclosure were incredible, particularly where the Debtors advantageously avoided the reach of their creditors through this scheme and additionally thwarted the Trustee's efforts to fully assess and account for the estate's assets. *See, In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984). This omission by the Debtors was not only material, it also was deliberate, fraudulent, and constituted a false oath as proscribed by § 727(a)(4)(A). *See, In re Raiford,* 695 F.2d 521, 522 (11th Cir.1983); *In re Robinson,* 506 F.2d 1184, 1188 (2d Cir.1974); *In re Steiker,* 380 F.2d 765, 768 (3d Cir.1967); 4 Collier on Bankruptcy, ¶ 727.04 (15th Ed.1986). The failure of the Debtors to reflect or disclose the nature and purpose of the existence of Lah, Inc. and its bank account constitutes a concealment of the Debtors' assets and further evidences an intent to hinder, delay or defraud their creditors. Further, the failure of the Debtors to turn over to the Trustee deposits in the Lahko Co. account (Lah, Inc.) is violative of Rule 1019(5), Bankr.R.

## Renbow, Inc.:

The Debtors owned and operated another business entity, a wholesale hair products business, known as Renbow, Inc. (Renbow). Although this entity was scheduled by the Debtors as an estate asset, the Trustee contends that it never had a separate corporate existence and is not a separate corporation but, rather, has been utilized by the Debtors to hinder and defraud creditors and the Trustee from obtaining assets used by that business. At trial, Marie Lah testified that Renbow was erroneously listed as a corporation on their Schedule B–2 (Marie Lah. X–EX.).[3] No amendment was ever made to correct such error. At the § 341 meeting, Debtors failed to disclose that Renbow was their proprietorship. Her testimony further revealed that funds of Renbow and Josef's Hair Design were commingled (Marie Lah, X–EX.; PX 27, PX 30, PX 31; Tina Berki, Direct EX.), and that neither she or her husband had authority to write checks on either business' checking account (Marie Lah, X–EX.). Such testimony is particularly revealing since both businesses were owned and operated by the Debtors and utilized the same checking account. (PX–27, pp. 1, 32–34). Renbow has no employees and had none at the time the Debtors filed their Chapter 11. (Marie Lah, X–EX.; Josef Lah, X–EX.). Renbow was managed by Josef Lah, although Marie was a part-owner. The § 341 examination reports, signed by both Debtors, fail to mention the existence of either Renbow or Lah, Inc. (PX–4 and 5). Funds on accounts at HNB under the name of "Directions" were commingled funds of the Debtors' hair salon and Renbow business, all belonging to the Debtors. Such were not disclosed or made available to the Trustee in violation of Rule 1019(5).

---

**3.** At an earlier hearing to determine whether the case should be converted the Debtors' accountant testified that Renbow was not a Subchapter S corporation. Marie Lah was present at that hearing. (Hearing TR. 46–47, April 28, 1986).

*Lahko, Inc.*

Lahko, Inc. was an entity caused to be established by the Debtors in 1983 (Marie Lah, X–EX.). Later, when Lah, Inc. was formed, Lah, Inc. used the same checking account. (Marie Lah, X–EX.). This checking account was not revealed during the § 341 meeting (PX–4 and 5), nor was it scheduled on the Debtors' Statement of Financial Affairs (PX–2), which was signed by the Debtors. The Debtors' Chapter 11 case was converted to Chapter 7 on February 2, 1987. In February, 1987, post-conversion, there was a balance in the Lahko, Inc. checking account which was not revealed to the Trustee (PX–5 and 22).

*Josef's Hair Design:*

This entity was a beauty salon owned and operated by the Debtors. Post-conversion, the Debtors continued to operate Josef's Hair Design and Renbow (Marie Lah, X–EX.; L. Broers, Direct EX.) without Court authorization. The Debtors knew that the continued operation occurred at a point in time after their Chapter 11 case was converted for liquidation proceedings (Josef Lah, Direct EX.; Marie Lah, X–EX.). The fact that those businesses continued to operate was not reported to the Trustee (Direct EX., Marvin Sicherman, Trustee), and employees of Josef's Hair Design were paid post-conversion without the knowledge or consent of the Trustee, and without Court approval. Further, a Future Directions–Josef's checking account, owned by the Debtors, had an account balance which was not turned over to the Trustee upon conversion of the Chapter 11.[4] (PX–32, 35, 36; Direct EX., Tina Berki).

### V.

■ A discharge in a consumer liquidating proceeding is afforded under § 727 of the Code [11 U.S.C. 727]. There is no constitutional right to a discharge in bankruptcy; it is a privilege to be exercised only so long as the judicial process which provides it is not abused. *In re Greenwalt,* 48

B.R. 804 (Bankr.Colo.1985); *In re Howard,* 55 B.R. 580, 583 (Bankr.E.D.N.Car.1985). Herein, the Debtors have abused that process. They have deliberately conducted themselves in a manner respecting these bankruptcy cases which, effectively, has hindered and delayed creditors and the Trustee in the liquidation of their estate by concealing and transferring, or permitting to be transferred estate assets as proscribed by § 727(a)(2). Further, through deliberate omissions and erroneous entries made on their schedules and statements of financial affairs, such conduct constitutes the making of a false oath as proscribed by § 727(a)(4) of the Code. A debtor's intent to frustrate creditors and officers of the Court can be inferred from conduct. *In re Olivier,* 819 F.2d 550 (5th Cir.1987). Further, the retention of the use of transferred property is strongly indicative of a fraudulent motive underlying the transfer. *In re Cadarette,* 601 F.2d 648, 651 (2d Cir.1979); and the transfer of title with attendant circumstances indicating that the debtor continued to use the property as his own is sufficient to constitute a concealment. *In re Kauffman,* 675 F.2d 127, 128 (7th Cir. 1981) (*per curiam*). This is precisely the situation involving Josef Lah's transferring his paycheck to a nondisclosed entity (Lah, Inc.) to pay his personal and family expenses. The Debtors' conduct was intentional.

### CONCLUSION

Accordingly, based on the above-stated findings and conclusions, the Debtors are hereby denied a discharge of their indebtedness.

**IT IS SO ORDERED.**

---

**4.** When the Debtors filed their Chapter 11 in November, 1985, it is remarkable to note that in item No. 1(d) on their Statement of Financial Affairs, the Debtors responded "None" to the inquiry concerning businesses engaged in by them within the six-year period immediately preceding their Chapter 11 filing.