In re Kevin R. WHEELER, Debtor.

Theresa A. (Wheeler)
LANKER, Plaintiff,

v.

Kevin R. WHEELER, Defendant.

Bankruptcy No. 88–30536 HCD.
Adv. No. 88–3101.

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

June 16, 1989.

**40**

George Biddlecome, Elkhart, Ind., for plaintiff.

L. Benjamin Pfaff, Elkhart, Ind., for defendant.

1. See n. 2, *infra*.

## MEMORANDUM OF DECISION

HARRY C. DEES, Jr., Bankruptcy Judge.

This matter is before the court on the plaintiff, Theresa A. Lanker's, COMPLAINT OBJECTING TO DISCHARGE ("Complaint") filed June 27, 1988. The plaintiff contends that the debtor's failure to execute the documents necessary to create and perfect a security interest on behalf of the plaintiff, as ordered by the DECREE OF DISSOLUTION OF MARRIAGE entered February 19, 1988 constitutes fraud rendering the underlying debt of $5,066.01 [1] non-dischargeable pursuant to 11 U.S.C. § 523. Alternatively, the plaintiff contends that the debtor's post-petition disposition of the 1983 Harley–Davidson motorcycle, which was property of the estate, prohibits the debtor from receiving a discharge pursuant to 11 U.S.C. § 727(a)(2). A hearing on the matter was held on January 24, 1989. After a briefing period during which no briefs were submitted, the matter was taken under advisement. Based on the record and for the reasons set out below the court DENIES the debtor's entire discharge pursuant to 11 U.S.C. §§ 727(a)(2)(B) and (a)(4)(A). The discharge granted to the debtor by this court on July 8, 1988 is hereby REVOKED to comport with the findings herein.

### Jurisdiction

This matter concerns a complaint to determine dischargeability of a certain debt or alternatively, an objection to discharge and as such are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(I) and (b)(2)(J). Pursuant to 28 U.S.C. § 157(a) and General Rule 45 of the Rules of the United States District Court for the Northern District of Indiana, this case has been referred to the undersigned bankruptcy judge for hearing and determination. After reviewing the record, the court makes the following entry. This entry shall serve as findings of fact and conclusions of law

as required by Federal Rule of Civil Procedure 52 made applicable to bankruptcy proceedings by Bankruptcy Rules 7052 and 9014.

### Findings of Fact

1. The plaintiff, Theresa A. (Wheeler) Lanker, was previously married to the debtor/defendant, Kevin R. Wheeler.

2. The plaintiff filed a petition for dissolution of their marriage on April 24, 1987 in Elkhart Superior Court II, Elkhart, Indiana, Hon. Stephen E. Platt, Cause No. 20D02–8704–DR243. At that time, the debtor was adamantly against the divorce and distraught because he was still in love with the plaintiff.

3. On more than one occasion before the divorce was finalized, the debtor offered the plaintiff $500.00 in settlement of her claim to the marital estate. The plaintiff rejected each offer and stated that the debtor threatened that "... if you won't accept you'll never see any amount of money or anything other than large lawyer bills for yourself...." The debtor was unable to remember if he said this but did not deny it.

4. The plaintiff testified that prior to the divorce the debtor threatened to hide his motorcycle, which was an asset of the marital estate in which there was $3,100.00 of equity according to the debtor's Schedule B–4, Property Claimed as Exempt. The debtor was unable to remember if he said this, but did not deny it.

5. The Decree of Dissolution of Marriage ("Decree") between the parties was entered on February 19, 1988.

6. Both the plaintiff and the debtor were represented by counsel in the dissolution action.

7. The debtor did not appeal the property settlement embodied in the February 19, 1988 Decree.

8. In the property settlement, the plaintiff was awarded the car (encumbered by a lien and the duty to pay off the lien) the dog, and various items of personal property. The debtor was awarded the marital home, the Harley–Davidson motorcycle, both encumbered by liens, and various items of personal property. Additionally, the court awarded the plaintiff a judgment for $1,000.00 for the disposition of the marital personal property of the parties. The court concluded that there was $5,293.02 of equity in the marital home and $2,839.00 of equity in the motorcycle. The court found that the plaintiff should be awarded one-half of the value of the equity in these items and awarded the plaintiff a judgment against the debtor in the amounts of $2,646.51 for the equity in the marital home and $1,419.50 for the equity in the motorcycle. The court further ordered that in payment and satisfaction of said judgments that they should be secured by a mortgage creating a lien against the marital real property and a lien against the title to the motorcycle, respectively. Both liens were to be subordinate to the purchase money security interest lenders. In order to fulfill these obligations the debtor was ordered to execute any and all documents reasonably necessary to accomplish the forgoing. Finally, the attorney for the plaintiff, George W. Biddlecome, Esq., was awarded a judgment against the debtor for $2,100.00 which covered the plaintiff's attorney fees for the dissolution action.[2]

9. The debtor failed to timely execute the necessary documents as ordered by Judge Platt in his February 19, 1988 Decree.

10. As a result of this failure, a hearing was set for March 28, 1988 at which the debtor was ordered to appear to execute the necessary documents.

11. The debtor failed to appear at the March 28, 1988 hearing.

12. The debtor admitted that he was served by the Sheriff with notice of the hearing, that he knew he was to appear at

---

**2.** These figures comprise the sum of $5,066.01, set out in the Complaint ¶ 6 as follows:

$2,646.51  one-half equity in the marital home
1,419.50  one-half equity in the motorcycle
1,000.00  judgment for disposition of marital personal property
———
$5,066.01

the hearing, but nevertheless failed to show.

13. As the result of the debtor's failure to appear at the March 28, 1988 hearing to execute the necessary documents, a Commissioner was appointed who executed some of those documents.

14. Counsel for the debtor, L. Benjamin Pfaff, Esq., was present at the March 28, 1988 hearing and was aware that a Commissioner had been appointed.

15. The debtor testified that he did not know that a Commissioner had been appointed to execute the documents.

16. The debtor filed his chapter 7 petition on March 29, 1988, before the plaintiff had an opportunity to perfect the security interest in the marital home or the motorcycle granted to her in the Decree.

17. The debtor testified that he decided to file his bankruptcy petition upon the advice of his counsel and after the Decree was entered by Judge Platt.

18. His reasoning was that "... he could not afford that bill."

19. The only debts listed by the debtor on his schedules include:

Secured Claims:

| Creditor | Basis for Claim | Amount |
|---|---|---|
| Security Federal Savings and Loan | Residential mortgage | $ 40,329.26 |
| First National Bank and Trust Company | Automobile loan | 6,000.00 [3] |
| First National Bank and Trust Company | 1983 Harley–Davidson Motorcycle | 1,200.00 |

Unsecured Claims:

| | | |
|---|---|---|
| Theresa Wheeler | | 5,066.01 |
| George W. Biddlecome | Attorney fees | 2,100.00 |
| Richard N. Meyers, D.D.S. | Dental services | 150.00 |

Debtor's Schedule A–2 and Schedule A–3.

20. On the debtor's STATEMENT OF INTENTIONS the debtor stated that he would reaffirm both the debt for the marital home and the debt for the motorcycle. To this date, no reaffirmation agreements have been filed.

21. The debtor is a truck driver.

22. The debtor's yearly income for 1986 was $21,000.00 and for 1987 it was $18,693.80.

23. The debtor's SCHEDULE OF CURRENT INCOME AND CURRENT EXPENDITURES FOR INDIVIDUAL DEBTOR reflects the following information:

| Total Estimated Current Monthly Income: | | $1,100.00 |
|---|---|---|
| Schedule of Current Expenses: | | |
| House payment | | $364.37 |
| Real Estate Taxes | | 24.63 |
| Utilities | | 166.96 |
| electric | $106.96 | |
| telephone | 27.00 | |
| cable TV | 33.00 | |
| Home maintenance | | 50.00 |
| Insurance | | 62.29 |
| life | 21.00 | |
| health | 8.80 | |

3. The automobile and underlying indebtedness were awarded to the plaintiff by the February 19, 1988 Decree, wherein the debtor was to be held harmless by the plaintiff.

| | | |
|---|---|---|
| motorcycle | $12.33 | |
| homeowners | 20.16 | |
| Motorcycle payment | | $97.87 |
| Transportation | | 35.00 |
| Food | | 200.00 |
| Clothing | | 30.00 |
| Medical, dental, etc. | | 25.00 |
| Laundry and cleaning | | 15.00 |
| Entertainment | | 25.00 |
| **TOTAL:** | | **$1,096.12** |

24. The debtor testified that he sold the Harley–Davidson motorcycle sometime before January 23, 1989 and before the plaintiff was able to secure a lien against it as set out in the Decree.

25. The motorcycle was still property of the estate at the time the debtor sold it.

26. The trustee formally abandoned the motorcycle from the property of the estate on April 10, 1989.

27. The debtor admitted that he did not pay off the bank with the proceeds from the sale of the motorcycle nor did he turn over $1,419.50 of the proceeds to the plaintiff in satisfaction of the judgment entered against him by the Decree.

28. The debtor's total unsecured claims amount to $7,316.01.[4]

29. If the debtor had complied with the Decree and executed the necessary documents establishing a second mortgage against the marital home in the amount of $2,646.51 and a lien against the motorcycle in the amount of $1,419.50, the amount of unsecured debt would only have been $3,250.00.[5]

30. As the result of the alleged disposition of the motorcycle, the debtor's monthly expenses are reduced by $97.87 for the motorcycle payment and $12.33 for the in-surance leaving his total monthly expenses at $985.92.

31. The difference between the debtor's monthly income and expenditures is a surplus of $114.08.[6]

## Discussion

The plaintiff contends in her COM-PLAINT OBJECTING TO DISCHARGE that the debtor's failure to execute the documents as ordered by Judge Platt in the February 19, 1988 Decree of Dissolution of Marriage constitutes fraud as proscribed by 11 U.S.C. § 523 and, further, constitutes conduct prohibited by 11 U.S.C. § 727(a)(2). She alleges that the purpose of his failure to execute the documents was designed exclusively to deprive her of her equity in the marital assets as ordered by Judge Platt.

The plaintiff does not specify what subsection of § 523(a) she relies upon and merely alleges "fraud" as a grounds for her objection to the discharge of the debtor. Therefore, the court will discuss § 523(a)(2)(A) and (a)(4), both of which cover fraudulent conduct as well as the § 727(a) claim. *In re Turner,* 82 B.R. 465, 467–68 (Bankr.W.D.Tenn.1988) (court held that even though the creditor set out no statutory authority for its request for relief, the court would nevertheless presume

---

**4.** $5,066.01  Theresa Wheeler
2,100.00  George W. Biddlecome, Esq.
150.00  Richard N. Meyers, D.D.S.

$7,316.01

**5.** $2,100.00  George W. Biddlecome, Esq.
1,000.00  Theresa Wheeler, personal property judgment from the Decree

150.00  Richard N. Meyers, D.D.S.

$3,250.00

**6.** $1,100.00  total monthly income
985.92  total monthly expenses

$ 114.08  surplus

reliance upon its choice of the most pertinent code sections).

As a preliminary matter, the court must allocate the burden of proof. It has been uniformly held that the burden of proving that a debt falls within one of the statutory exceptions to discharge falls upon the party opposing or objecting to discharge. *Hill v. Smith,* 260 U.S. 592, 593, 43 S.Ct. 219, 219, 67 L.Ed. 419 (1923); *Belfry v. Cardozo (In re Belfry),* 862 F.2d 661, 662 (8th Cir. 1988); *Long v. Long (In re Long),* 93 B.R. 791, 794 (Bankr.M.D.Ga.1988). The burden then is upon the plaintiff. A party attempting to show fraud by the debtor must do so by clear and convincing evidence. *First National Bank of Red Bud v. Kimzey (In re Kimzey),* 761 F.2d 421, 423–24 (7th Cir.1985) (the case involved objections to the discharge of particular debts under §§ 523(a)(2)(A) and (a)(6)); *Chittenden Trust Company v. Mayo (In re Mayo),* 94 B.R. 315, 329 (Bankr.D.Vt.1988) (court concluded that in the absence of Congressional guidance, conflicting case law, and only one analogous United States Supreme Court case that a successful § 727 proceeding is a cataclysmic attack on the debtor's fresh start and is the equivalent of an all out nuclear war on the debtor; therefore, the clear and convincing standard is proper); *Georgetown Village Apartments v. Fontana (In re Fontana),* 92 B.R. 559, 561 (Bankr.M.D.Ga.1988); *Household Finance Corporation v. Herke (In re Herke),* 92 B.R. 962, 963 (Bankr.S.D.Fla.1988). The statutory exceptions are narrowly construed in favor of the debtor, *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Murphy & Robinson Investment Company v. Cross (In re Cross),* 666 F.2d 873, 879–80 (5th Cir.1982), to promote the Congressional objective of ensuring that the debtors have a fresh start "... unhampered by the pressure and discouragement of pre-existing debt." *Lines v. Fredrick,* 400 U.S. 18, 20, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)).

The weight of that burden is crushing in that fraudulent intent is often impossible to prove. That difficulty was characterized by Justice DeWitt in the case of *Merchants National Bank v. Greenwood,* 16 Mont. 395, 41 P. 250 (1895) wherein he stated:

"Fraud conceals itself. It does not move upon the surface in straight lines. It goes in devious ways. We may with difficulty know 'whence it cometh and whither it goeth.' It 'loveth darkness rather than light, because its deeds are evil.' It is rarely that we can lay our hand upon it in its going. We are more likely to discover it at its destination, before we know that it has started upon its sinuous course. When we so discover it, the searchlight of a judicial investigation goes back over its trail and lightens it from beginning to end. As the woodsman follows his game by slight indications, as a broken twig or a displaced pebble, so fraud may become apparent by innumerable circumstances, individually trivial ... but in their mass 'confirmation strong as proofs of holy writ.' "

41 P. at 259.

■ The question of whether a debtor had the requisite intent to cause denial of his discharge is one of fact. *First Texas Savings Association, Inc. v. Reed (In re Reed),* 700 F.2d 986, 992 (5th Cir.1983). Fraudulent intent may be inferred by the court from the conduct of the debtor and the surrounding circumstances. *United States v. Powell,* 413 F.2d 1037, 1083 (4th Cir.1969); *First National Bank of Midlothian v. Harrell (In re Harrell),* 94 B.R. 86, 91 (Bankr.W.D.Tx.1988).

The court will now discuss the various statutory exceptions to discharge alleged by the plaintiff.

*Section 523(a)(2)(A)*

■ Eleven U.S.C. § 523(a)(2)(A) provides

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A) (1989).

In order for the plaintiff to prevail under this subsection she must show

1) that the debtor made a representation to the plaintiff,

2) that he knew the representation was false,

3) that it was made with the intent to deceive,

4) that the plaintiff relied on the representation, and

5) that the plaintiff suffered a loss as a result of the representation.

*Barker v. Clemens (In re Clemens)*, 83 B.R. 945, 950 (Bankr.N.D.Ohio 1988); *Burroughs v. Pashi (In re Pashi)*, 88 B.R. 456, 458 (Bankr.N.D.Ga.1988). The plaintiff has proffered no evidence and the court can find none from its independent search of the record, that the debtor made a representation to the plaintiff, that he knew to be false, with the intent to deceive upon which the plaintiff relied.

There is no question that the plaintiff suffered a loss as the direct result of the debtor's refusal to execute the necessary documents as ordered by the Decree and his thereafter, immediate filing for relief under the Bankruptcy Code. There also is evidence from which the court may be able to discern an intent to defraud the plaintiff and circumvent the effect of the Decree. However, absent clear and convincing evidence from the plaintiff that the debtor made a representation he knew to be false, the plaintiff's claim under § 523(a)(2)(A) must fail. As there has been no allegation of the use of a statement regarding the debtor's or an insider's financial condition, then § 523(a)(2)(B) is also inapplicable on these facts.

*Section 523(a)(4)*

The circumstances and conduct relating to an allegation of fraud under § 523(a)(4) differ dramatically from those required for a finding of fraud under § 523(a)(2)(A). That section reads

**Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C. § 523(a)(4) (1989).

The phrase "while acting in a fiduciary capacity" clearly qualifies the words "fraud or defalcation." 3 *Colliers on Bankruptcy* (MB) ¶ 523.14 at 523–96 (15th ed. Supp. June 1988). Therefore, it is incumbent upon the plaintiff to establish that she shared a fiduciary relationship with the debtor from which the fraudulent conduct arose.

The issue of whether the debtor is a fiduciary for the purposes of § 523(a)(4) is a question of federal law, *Nes Smith Electric Company, Inc. v. Kelley (In re Kelley)*, 84 B.R. 225, 229 (Bankr.M.D.Fla.1988), although state law may be considered in the determination of whether or not a fiduciary relationship exists. *Driggs v. Black (In re Black)*, 787 F.2d 503, 506 (10th Cir. 1986); *Feldman v. Kaufman (In re Kaufman)*, 85 B.R. 706, 710 (Bankr.S.D.N.Y. 1988).

The concept of "fiduciary capacity" under § 523(a)(4) is limited to technical or express trusts, rather than those implied by law. *Barclays American/Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878 (8th Cir.1985); *United American Insurance Company v. Koelfgen (In re Koelfgen)*, 87 B.R. 993, 996 (Bankr.D.Minn. 1988). "Express or technical trusts are formed by direct and positive acts of both parties, manifested by some instrument in writing, whether by deed, will or otherwise." *Id.* Most courts have held that the trust or fiduciary relationship must have existed prior to the conduct giving rise to the claim. *Kelley*, 84 B.R. at 229; *Koelfgen*, 87 B.R. at 996. Thus, the debtor must have been a trustee or fiduciary before the wrong and not a trustee *ex maleficio.* *Davis v. Aetna Acceptance Co.*, 293 U.S.

328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Kelley,* 84 B.R. at 229.

In this case the plaintiff alleges that the debtor is a constructive trustee. She contends that, but for the debtor's flagrant disregard of Judge Platt's Decree, her claim would have been secured by a second mortgage on the marital real estate and a second lien on the title of the motorcycle.

In support of this theory the plaintiff proffers the case of *Dodd v. Postel's Estate,* 214 Ind. 39, 14 N.E.2d 539, 545 (1938). The facts of that case are as follows. Lewis and Emma Postel were divorced and by agreement, the marital assets were divided equally. Sometime after the death of Lewis, Emma discovered that he had fraudulently concealed assets and failed to include them in the agreement dividing the marital assets. After the commencement of this action, Emma died and Dodd was substituted in her place. The court found on the facts presented that Lewis was a trustee of the property of Emma and was under the highest duty to disclose all of the property so held by him. The court then held that Emma's claim was not a collateral attack on the original judgment which would be precluded but was instead in aid of the former judgment and a new trial should be granted.

■ It has generally been agreed that "... a constructive trust is not sufficient to create a fiduciary relationship under discharge provisions of the Bankruptcy [Code]." *National Bank of Detroit v. Olson (In re Olson),* 9 B.R. 52, 55 (Bankr.E. D.Wis.1981) (quoting *Angelle v. Reed (In re Angelle),* 610 F.2d 1335, 1339 (5th Cir. 1980)). The formal requirements for a valid trust in Indiana are controlled by statute which states:

> A trust in either real or personal property is enforceable only if there is written evidence of its terms bearing the signature of the settlor or his authorized agent.

Ind.Code. 30–4–2–1(a) (1972).

It does not appear from the face of the Decree of Dissolution of Marriage that a trust was established. In *Postel's Estate,* Lewis, the husband fraudulently concealed assets from the distribution of marital property prompting the court to imply a constructive duty to disclose prior to his failure to disclose. On the facts of the case at bar, fraud by the debtor, if so found, did not occur until after the Decree was entered and the debtor filed his bankruptcy petition. Even if the court were to find that a constructive trust existed, it would not be a trust created before the act of wrongdoing but as a result of the act of wrongdoing which would not establish the requisite § 523(a)(4) fiduciary relationship. *Kelly,* 84 B.R. at 229; *Compare with Brown v. Brown (In re Brown),* 21 B.R. 377, 379–80 (Bankr.E.D.Cal.1982) (court held that divorce decree fixing the plaintiff ex wife's interest in the debtor's monthly pension checks at $9/22$, and his failure to so remit to her $9/22$ of the monthly check was not a property settlement but a division of community property and found the debtor to be a constructive trustee of the plaintiff's portion so that his failure to so remit amounted to a breach of fiduciary duty whereby the debt was held nondischargeable pursuant to § 523(a)(4).) *and Teichman v. Teichman (In re Teichman),* 774 F.2d 1395, 1400 (9th Cir.1985) (court found that community property settlement awarding the plaintiff ex wife 43% of the debtor's Air Force pension did not create a valid trust for § 523(a)(4) purposes and even though under California law a constructive trust could be found as the result of the failure of the debtor to turn over to the plaintiff 43% of each monthly pension payment, the trust would be imposed only after the debtor failed to turn over the plaintiff's portion of the pension check and would not render the debt nondischargeable because the debtor was not a fiduciary at the time of the default pursuant to § 523(a)(4), the court found that the debtor was never intended to hold the money for the plaintiff's benefit so no estate was conveyed to the husband as trustee).

The court agrees that as a general rule, § 523(a)(4)'s fiduciary relationship should not apply in connection with a property settlement agreement and a divorce decree. Obligations other than maintenance, alimo-

ny, or support should only be excepted from discharge as fiduciary obligations where the intent of the parties at the time of the agreement was to establish a fiduciary relationship.

Therefore, the court finds that the plaintiff has failed to establish that the requisite fiduciary relationship existed on February 19, 1988 when the Decree was entered to support a finding of nondischargeability of a debt pursuant to 11 U.S.C. § 523(a)(4).

### Section 727(a)(2)

■ The final proposition before the court arises from the plaintiff's claim that the debtor's entire discharge should be denied pursuant to § 727(a)(2)(B) which reads:

(a) The court shall grant the debtor a discharge, unless ...

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed ...

(B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(B) (1989). The plaintiff alleges that the debtor's disposition of the motorcycle after the filing of the petition precludes the court from granting a discharge to the debtor because his disposition of the motorcycle, failure to comply with the Decree, and the timing of the filing of his bankruptcy petition amounted to a conscious scheme to circumvent Judge Platt's order and was done with intent to hinder, delay, and defraud the plaintiff in her pursuit of the judgment awarded to her in the Decree.

A discharge in a chapter 7 case is afforded the debtor under 11 U.S.C. § 727 unless his conduct falls within any of the ten exceptions enumerated in that section. "There is no constitutional right to a discharge in bankruptcy; it is a privilege to be exercised only so long as the judicial process which provides it is not abused." *Sicherman v. Lah (In re Lah)*, 88 B.R. 141, 145 (Bankr.N.D.Ohio 1988). In this case,

the debtor has abused that process. While the court must be ever vigilant to the Congressional mandate that requires a balancing between the "fresh start" policy and preventing a dishonest debtor from avoiding the consequences of wrongful pre- or post-petition conduct, abuse cannot be tolerated. *Mayo*, 94 B.R. at 322.

The solicitude of Congress, however, stops at the debtor who does not measure up to that appealing image ('honest but unfortunate debtor') and who has engaged in grossly irresponsible or fraudulent conduct, has been recalcitrant during the case or has over utilized the privilege.

Riesenfeld, *Creditors' Remedies and Debtors' Protection*, p. 729 (3rd ed. 1979).

Because intent is difficult to prove, it may be inferred by the conduct of the debtor as well as from circumstantial evidence. *Harrell*, 94 B.R. at 91; *Striffler v. Tarle (In re Tarle)*, 87 B.R. 376, 378 (Bankr.W.D.Pa.1988). In order for the discharge to be denied, the evidence when considered in light of all of the facts must lead the court to the conclusion that the debtor has violated the spirit of the Bankruptcy Code. *Jones v. Jones (In re Jones)*, 97 B.R. 36, 38 (Bankr.D.Mont.1989); *Fox v. Cohen (In re Cohen)*, 47 B.R. 871, 874 (Bankr.S.D.Fla.1985).

In a case such as this, where the facts must be found based on conflicting testimony of adversarial witnesses, the court must determine whose testimony is more plausible. That necessarily requires the court to look to the demeanor and credibility of the witnesses. In this case, the court is inclined to accept the plaintiff's rendition of the facts as more closely related to the actual circumstances surrounding this episode. The debtor's testimony lacked integrity and credibility. His answers were often evasive and his "selective memory" was obvious during the cross-examination by counsel for the plaintiff.

The court concludes that the particular judgment resulting from the Decree that is now before the court is in the form of a property settlement which under proper circumstances, would be dischargeable.

Here, however, the character of the judgment is not at issue; rather it is the conduct and attitude of the debtor.

The court finds the material facts are as follows:

1) the debtor threatened the plaintiff that if she did not take the $500.00 offer of settlement she would never see any money, only big lawyer fees;

2) the debtor threatened to hide the motorcycle;

3) the debtor failed to execute the necessary documents as ordered by the Decree on February 19, 1988;

4) the debtor, with knowledge of the hearing to execute those documents set for March 28, 1988 and of the purpose of the hearing, failed to appear;

5) the debtor filed his chapter 7 petition the next day, March 29, 1988;

6) the debtor did not appeal the property settlement but filed a bankruptcy petition instead;

7) the debtor testified that he sold the motorcycle before the plaintiff could exercise her right to secure her judgment as set out in the Decree;[7]

8) the debtor did not pay off the lien to the bank with the proceeds of the motorcycle;[8]

9) the debtor failed to reaffirm the debts for the marital home and motorcycle as set out in his Statement of Intentions;[9]

10) the timing of the filing of his bankruptcy petition precluded the plaintiff from creating and perfecting her rights in the marital assets as set out in the Decree;

11) the debtor has excess income over expenses that could support a plan of reorganization;

12) the debtor's total unsecured debt is $7,316.01;

13) but for the debtor's liability stemming from the Decree, the debtor's only unsecured debt would be $150.00 which is substantially less than the $90.00 filing fee for a chapter 7 case and the $600.00 which he paid to his bankruptcy attorney.

Based on these facts the court finds it easy to infer intent from the debtor's course of conduct to hinder, delay, or defraud the plaintiff by concealing or transferring the motorcycle which was property of the estate. The court is left with the inescapable conclusion of a conscious scheme of the debtor to use bankruptcy to frustrate the Decree of the divorce court, which violates the spirit of the Bankruptcy Code.

On these facts, to grant the debtor a discharge would be to reward him for his efforts to thwart the property settlement embodied in the Decree and his intent to

**7.** It has come to the court's attention that on March 31, 1989, well after the dischargeability hearing, the First National Bank & Trust Company ("Bank") filed its PETITION FOR RELIEF FROM AUTOMATIC STAY AND ABANDONMENT OF COLLATERAL. The Bank claimed that the debtor executed a promissory note on October 21, 1987 secured by the 1983 Harley–Davidson motorcycle and that its interest was perfected on the Certificate of Title for the Motorcycle. The Bank alleged that the last payment made by the debtor on the note was made on March 1, 1989 for the payment due January 15, 1989. In a document entitled STIPULATION FOR RELIEF FROM AUTOMATIC STAY ("Stipulation") filed April 26, 1989, and signed by counsel for the Bank, counsel for the debtor and the Trustee, the parties stipulated that the Bank would be granted relief from the stay to repossess and liquidate the motorcycle but that the Bank would not exercise such right in the event that the debtor pay the note secured by the motorcycle current within 30 days and continue making the payments when due. The Stipulation also contained a "drop dead" clause allowing the Bank to repossess and liquidate if the debtor defaulted on the Stipulation. The Stipulation was approved and entered as an order of the court on May 3, 1989. The debtor is either lying to the court about his current possession of the motorcycle or lied to the court at the January 23, 1989 hearing when he testified under oath that he sold the motorcycle. This conduct further supports the court's finding that the debtor has abused the spirit of the Bankruptcy Code.

**8.** Since the bank holding the lien on the motorcycle was presumably a purchase money lender who probably held the title to the motorcycle, the court does not understand how the debtor could convey clear title to the motorcycle unless by some form of fraudulent conduct.

**9.** *See* n. 7, *supra.*

deprive the plaintiff of her rightful share of the marital assets.

The court finds that the debtor's disposal of the motorcycle constitutes an actual transfer of valuable property which reduced the assets available to the creditors which was made with fraudulent intent. *Lee Supply Corporation v. Agnew (In re Agnew)*, 818 F.2d 1284, 1287 (7th Cir.1987); *Jones*, 97 B.R. at 38.

■ However, if it is determined that contrary to the debtor's testimony at the January 23, 1989 dischargeability hearing that he did not actually sell the motorcycle then the issues become one of fraud upon the court and perjury. While the potential untruth of the debtor's sworn testimony may open him up to liability under other theories, it is enough here to mount a direct challenge to his discharge.

Eleven U.S.C. § 727(a)(4)(A) states in pertinent part:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A) (1989). The purposes of this section is to provide the trustees and creditors with reliable and accurate information about the debtor. *First Florida Bank v. Just (In re Just)*, 97 B.R. 98, 100 (Bankr.M.D.Fla.1989). However discharge should not be denied where the untruth was the result of mistake or inadvertence. *Id.* Instead, the false oath or account must be made intentionally and with regard to a material matter in the case, or in a manner evidencing a reckless and cavalier disregard for the truth. *Id.; Discenza v. MacDonald (In re MacDonald)*, 50 B.R. 255, 259 (Bankr.D.Mass. 1985). A false oath may be made by the debtor by signing sworn documents that bear false information, at an examination during the case at a meeting of creditors, *Lissack Enterprises, Inc. v. Braidis (In re Braidis)*, 27 B.R. 470, 472 (Bankr.E.D.Pa. 1983), a Rule 2004 examination, *Just*, 97 B.R. at 100, or at an evidentiary hearing such as the dischargeability hearing at issue here. *Id.*

The court finds that if the debtor did not sell the motorcycle but instead lied about the transfer, then this conduct amounted to intent by the debtor to hinder, delay, or defraud his creditors by concealing property of the estate after the filing of the petition. 11 U.S.C. § 727(a)(2)(B) (1989). The court further finds that if the debtor gave false testimony to the court at the hearing on January 23, 1989 concerning the disposition of the motorcycle then the debtor has knowingly, wilfully, and fraudulently made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A).

Additionally, if the plaintiff had succumbed to both the stringent §§ 523 *and* 727 analyses, the facts in the case would have been ripe for a § 707(b)[10] substantial abuse claim. The court concludes that there is ample evidence in the record to support dismissal for substantial abuse. 11 U.S.C. § 707(b) (1989). *In re Ploegert*, 93 B.R. 641, 642 (Bankr.N.D.Ind.1988); *In re Wegner*, 91 B.R. 854, 858 (Bankr.D. Minn.1988).

The debtor's debts are primarily consumer debts. The debtor's monthly income is $1,100.00 and his monthly expenses are $985.92 leaving a monthly surplus of $114.08. On a minimum 36 month chapter 13 plan of reorganization the debtor could make total payments of $4,106.88 against his total unsecured claims of $7,316.01.

Additionally, if the debtor had complied with Judge Platt's Decree and had executed the necessary documents securing

---

10. **11 U.S.C. § 707 Dismissal.**

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including ...

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but [and] not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

**50**

the property settlement award to the plaintiff from the Decree[11] then the debtor's unsecured debt would only be $3,250.00.[12] This amount is substantially less than a 36 month chapter 13 plan would allow.[13]

By availing himself of the power of the automatic stay granted to the debtor upon the filing of a voluntary petition in bankruptcy, the debtor was able to preclude the plaintiff from perfecting her security interest in the marital home and left her unable to pursue the debtor to create and perfect her security interest against the title to the motorcycle, because the property was protected by the automatic stay. 11 U.S.C. § 362(a)(4) (1989); *but see Zachary v. Zachary (In re Zachary)*, 99 B.R. 916 (Bankr.S.D.Ind.1989) (court held that lien granted to wife pursuant to the divorce decree representing her interest in the marital real estate was not a judicial lien that attached to an interest of the debtor that could be avoided pursuant to 11 U.S.C. § 522(f)(1)). As a result, the debtor's attempt to claim $3,100.00 of the unencumbered equity in the motorcycle against his personal property exemption appeared legitimate and went unquestioned by the Trustee. Ind.Code 34–2–28–1(a)(2) (1986 Supp.).

*Conclusion*

Accordingly, the court finds that the debtor concealed or transferred valuable property of the estate after the filing of the petition with the intent to hinder, delay, or defraud the plaintiff within the meaning of 11 U.S.C. § 727(a)(2)(B). The court further finds that the debtor knowingly, wilfully, and fraudulently made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A).

SO ORDERED.

11. *See, Zachary v. Zachary (In re Zachary)*, 99 B.R. 916 (Bankr.S.D.Ind.1989) wherein Judge Tinder held that a dissolution decree does not create a judicial lien that can be avoided by a debtor pursuant to 11 U.S.C. § 522(f)(1).

12. *See,* n. 5, *supra.*

13. *See,* n. 6, *supra.*

$114.08 surplus income per month
× 36 months
—————
$4,106.88 available to creditors over the life of a chapter 13 plan.